UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. ED CR 25-00310-KK-1 |
| Plaintiff, | ) |
| | ) Riverside, California |
| vs. | ) |
| | ) Monday, October 6, 2025 |
| JOSEPH BLANDON-SAAVEDRA, | ) |
| | ) (11:13 a.m. to 11:41 a.m.) |
| Defendant. | ) |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| Appearances: | See next page. |
| Court Reporter: | Recorded; CourtSmart |
| Courtroom Deputy: | Rachel Maurice |
| Transcribed by: | Jordan Keilty<br>Echo Reporting, Inc.<br>9711 Cactus Street, Suite B<br>Lakeside, California 92040<br>(858) 453-7590 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Plaintiff: COURTNEY N. WILLIAMS, ESQ.
Assistant United States Attorney
Office of the United States Attorney
3403 Tenth Street, Suite 200
Riverside, California 92501
(951) 276-6202

For the Defendant: Federal Public Defenders Office
BY: AYAH SARSOUR, ESQ.
3801 University Avenue
Suite 700
Riverside, California 92501
(951) 276-6346

Riverside, California; Monday, October 6, 2025 11:13 a.m.

--o0o--

(Call to Order)

THE CLERK: Calling Case Number 5:25-CR-00310-KK, United States of America versus Joseph Blandon-Saavedra.

Counsel, please state your appearances.

MS. WILLIAMS: Good morning, your Honor. Courtney Williams on behalf of the United States.

THE COURT: Ms. Williams, good morning.

MS. SARSOUR: Good morning, your Honor. Ayah Sarsour on behalf of Mr. Joseph Blandon-Saavedra. He's present before the Court in custody, being assisted by the Spanish language interpreter.

THE COURT: Ms. Sarsour and Mr. Blandon-Saavedra, good morning.

THE DEFENDANT (through interpreter): Good morning.

THE COURT: Mr. Blandon-Saavedra, you're being provided a Spanish language interpreter for today's hearing, is that correct?

THE DEFENDANT: Yes.

THE COURT: And have you been able to understand the translation that the interpreter has provided to you?

THE DEFENDANT: Yes.

THE COURT: All right. Do you have any questions

for me about that translation?

THE DEFENDANT: No.

THE COURT: All right. Thank you.

We are here for a status conference with respect to defense counsel's ability to confer with their client. Is that correct, Ms. Sarsour?

MS. SARSOUR: Yes, your Honor.

THE COURT: And the Court has received a status report from Ms. Williams as well as some email correspondence between counsel.

Is that correct, Ms. Williams?

MS. WILLIAMS: Yes, your Honor.

THE COURT: All right. Thank you.

Well, Ms. Sarsour, what is our status?

MS. SARSOUR: Your Honor, it is our position that we don't believe that Mr. Blandon has adequate access to counsel, and we would like to respectfully reserve all argument for our motion to dismiss, which we intend to file this week.

THE COURT: Okay. Well, what's your status?

MS. SARSOUR: We do not -- we --

THE COURT: Have you been able to contact your client?

MS. SARSOUR: Your Honor, I would like to reserve specific arguments for our motion. I do not have adequate

access to my client at this time.

THE COURT: Why not?

MS. SARSOUR: The --

THE COURT: Well, what does that mean, you don't have adequate access? Do you have access?

MS. SARSOUR: No.

THE COURT: Ms. Sarsour, the Court set -- first of all, Ms. Williams --

MS. SARSOUR: Your Honor, the Court set this status for the Government.

THE COURT: Ms. Sarsour.

Ms. Williams, this Court did not set this status conference at the request of defense counsel. The Court set this status conference on its own initiative. In the papers, it was represented that the Court set this at the request of defense counsel. It did not. The Court on its own initiative set the status conference because the Defendant's in Immigration detention, and the Government is proceeding with a criminal prosecution.

So, as long -- which is the Government's absolute right. But, in order to proceed on both those tracks, the Government must also comply with the Sixth Amendment as it pertains to a criminal prosecution, which is different than an Immigration detainee's access to his or her counsel for purposes of Immigration law, and the Immigration detention

center typically sets its attorney access on the basis of Immigration counsel, not on the basis of criminal defense counsel.

So, for purposes of detention of a defendant who is being prosecuted by the Government in Federal Court for a criminal offense, defense counsel and defense counsel's investigators and all of their agents have to have the same level of access to a defendant that they would have if that defendant were being held by the Bureau of Prisons. I'm not certain that's happening. I'm not certain why that's not happening since it's just a matter of making sure that defense counsel and their investigator can access a defendant whenever they need to, at their discretion, not at the discretion of the detainers.

Now, the Bureau of Prison has a process. Defense counsel just doesn't get to walk in any time they want to MDC downtown. They have to make an appointment, but there is a process for that to happen. That same level of access has to happen at Adelanto for a defendant who is detained in this District for purposes of a criminal prosecution so that defense counsel can prepare for trial. And that's -- that was the purpose of this hearing, just to make sure that that level of access is occurring for purposes of ICE.

I'm not ascribing any motive to that other than that's not typically what ICE does for purposes of detaining

Immigration offenders. Historically, ICE does not detain criminal defendants. Their custody subjects are of a different category with different rights. A criminal defendant has much greater rights than someone in Immigration custody. And, so, it is imperative that the custodians understand that difference and ensure that a defendant who is also being prosecuted in Federal Criminal Court is allowed access to their attorney on a far greater basis than if they were just going through the Immigration process.

MS. WILLIAMS: May I respond, your Honor?

THE COURT: You may.

MS. WILLIAMS: So, to address a couple of points, first, I -- I tried to communicate -- I'm not sure I was successful, but I tried to communicate that I'm well aware that your Honor is the one that set the status conference. However, I was -- I was told that defense counsel made certain representations about not being able to -- to see her client. So, I wanted to give the Court full context, full scope of what's going on. And, so, that is why I filed a status report.

THE COURT: I appreciate that.

MS. WILLIAMS: Now, to address some of your Honor's other points, I am well aware that, you know, this is an Immigration facility. Those proceedings are very

different. That is why when defense counsel contacted me on September 22nd, I immediately reached out to my case agent, who's here present in court. He reached out to ERO, who handles the Federal Immigration side of matters and the facility, and immediately, they -- we -- immediately, we were told from ERO that they would make accommodations for this particular Defendant on this particular case.

I reached out to defense counsel less than 24 hours later letting her know that that would be the case. Less than 24 hours after that, she told me there were too many restrictions and that she was going to file a motion to dismiss. Again, that is her right. She is free to represent her client however she sees fit. But all of this has taken place in a matter of 48 hours in terms of her complaining, me reaching out to the facility, and then her response.

And in the emails that I have filed with the Court, the response from ERO is they would video conferencing calls, that defense attorneys -- or criminal defense attorneys, their paralegals, their investigators and translators alike are allowed to visit criminal defendant, but they need prior notice and anyone who's not an attorney would have to be cleared by the facility. And that -- those in-person visits could take place from 8 a.m. to 6 p.m. seven days a week and that defense attorney could make

appointments the day before up to 14 days before a visit. And, not only that, they provide a direct line where she could communicate with her client directly.

And, so, outside of providing in-person visits seven days a week, video conferencing calls, and direct line of communication to her client, I'm not sure what else -- let me say this. If this were a prison, the BOP, this same level of access would be provided at a regular, you know, criminal detention center. This -- they're providing the same level of access here.

THE COURT: And that's what the Court just wants to ensure, that defense counsel's access to her client will be the same with ICE at Adelanto as it would be if he were detained at MDC downtown with the Bureau of Prisons. So, what ever that structure is in terms of notice, in terms of agency, if a paralegal can go to MDC and interview a client without some kind of prescreening and authorization, then the same should hold true for ICE since it is both the United States of America performing that function.

MS. WILLIAMS: And I wanted to also say I did reach out to defense counsel to see what days she attempted to go visit her client or what days the investigator attempted to go visit the client and they were denied or what other means she used or her investigator used to contact the Defendant and were declined, and I never

received a response.

And, so, I don't know how the Government is supposed to facilitate this. And let me just say too I -- the case law I've seen, the Defendant has been suing on some kind of habeas the prisons. So, I don't -- I don't want to make it seem like I'm conceding that the --

THE COURT: Wait. Wait. What -- what case law and habeas?

MS. WILLIAMS: Well, I just want to -- I just want to make clear for the record I'm not conceding that it's our job and our role to facilitate communications between defense counsel and their client. I'm not -- I haven't fully versed myself --

THE COURT: When you say "our role", do you mean the United States of America?

MS. WILLIAMS: I mean the prosecutor's office. Certainly, the United States Government has to facilitate communications between defense counsel and their client. I'm not sure the U.S. Attorney's Office has some role in that. I don't want to speak out of turn because I have not versed myself on the case law.

THE COURT: And -- and the Court will not hold you to that, Ms. Williams. The Sixth Amendment guarantees your right to counsel.

MS. WILLIAMS: One hundred percent.

THE COURT: And if the Sixth Amendment is violated by the Government, one of the potential consequences is dismissal of an action.

MS. WILLIAMS: One hundred percent.

THE COURT: So, it -- ultimately, that impacts the U.S. Attorney since it's the U.S. Attorney that prosecutes the offense.

MS. WILLIAMS: One hundred percent. But, I mean, I guess --

THE COURT: It is not your job, I think, to your point, to make appointments for defense counsel.

MS. WILLIAMS: I just want to say that I think that the -- what I have tried to lay out in my status report is that while I'm not sure what my role in this situation is, I have tried to be as helpful as possible. I think ICE has tried to be as accommodating and helpful as possible, and I have received no response on how his defense attorney has been hindered in communicating with her client.

THE COURT: And that's one reason why the Court set a status conference, Ms. Williams, is to find that out. This is why I asked Ms. Sarsour at the beginning, Have you been able to talk to your client?

So, Ms. Williams is right, Ms. Sarsour. It's not her job to schedule your appointments, and the Court wants to find out what attempts you've made to contact your

client, to meet with your client, and whether you've been able to and, if not, why not. And you don't have to tell me if you want to reserve that for your motion to dismiss, but that's going to impact your motion to dismiss probably since the whole purpose of this hearing is to try to ensure that you do have access to your client.

MS. SARSOUR: Well, your Honor, as you can see, my client is a Spanish speaker, and we have multiple declarations that I cannot get an interpreter to go to Adelanto. So, even if I am or was able to, even though my investigator went and tried, I have not tried because I cannot get an interpreter to go with me. So, me going up there would be pointless at this moment.

But my investigator, who does speak Spanish, was denied access.

THE COURT: Okay.

MS. SARSOUR: And I would like to reserve all further argument for my motion to dismiss.

THE COURT: You can reserve whatever you would like, Ms. Sarsour. But if you can't coordinate with Ms. Williams, who is making a good faith attempt to assist defense counsel for purposes of contacting your client in ICE custody, then it doesn't assist your client.

So, if you want your investigator to go talk to your client, who does speak Spanish, then, Ms. Williams, can

Ms. Sarsour call you to help coordinate that?

MS. WILLIAMS: Um, she --

THE COURT: I'm not asking you to be her secretary, but I am, since you are the Government and you have a conduit to ICE for purposes of this process, it might facilitate the process.

MS. WILLIAMS: Yes. Yes, your Honor. The agent is here. We have great communications with the facility. I did also -- so, I'm happy to facilitate that. I'm happy -- I'm not -- again, I'm not conceding that that is the Government's role, but I --

THE COURT: No concession at all in this area.

MS. WILLIAMS: -- I am more than happy to help facilitate any -- any way that I can.

THE COURT: Look, what the Court wants is for defense counsel's investigator to be able to go and meet with the Defendant.

If the defense counsel's investigator can go to MDC and meet with a criminal defendant without having to get prescreened, then they should be able to go to Adelanto and meet with a criminal defendant who just happens to be housed at Adelanto. For purposes of the Sixth Amendment, every impediment that the Government puts up for accessing a defendant is going to be problematic when the Defense brings a motion to dismiss.

MS. SARSOUR: And, your Honor, to address -- could I address that point?

THE COURT: Don't worry, Ms. Williams, you'll -- you'll get your opportunity.

MS. SARSOUR: So -- just so the record is clear, the Court did say that any access that we would have at MDC. We don't have to make appointments to go to MDC. We just show up when there's visiting hours. We also don't have to provide MDC notice, and we are allowed to bring our electronics. My investigator was told she could only bring a one writing utensil and a notebook, not even pic -- pictures, not the case file, nothing else.

So, as we stand here today, we do not have the same access we do to Mr. Joseph Blandon as if he would have been -- if he were at MDC. And, also, yes, he is at an Immigration facility, but all these -- I will say briefly that all these loopholes that we have to -- or hoops that we have to jump through are even more offensive and more excessive because he is out of custody on the criminal case. And, so, even if I have 8 to 6 p.m. access through video, that is not the same access I would have if he was truly released from custody, nor is it the same access I would have at MDC.

THE COURT: Okay.

MS. SARSOUR: Or any other facility, including

West Valley Central Detention Center in San Bernardino.

THE COURT: Ms. Williams?

MS. WILLIAMS: I don't claim to know how things work at MDC. So, I don't know what the protocol is for MDC, but what I do know is that MDC has operating hours. This facility also has operating hours, and like there are times at any, you know, prison facility where there's lockdown, where, you know, defendants are being moved and housed, where people --

THE COURT: Every week we get an email that the elevators aren't working at MDC, and so counsel visits have been canceled, to your point, Ms. Williams. Every institution has protocol for purposes of accessing people in custody. That's the nature of a detention facility. And, so, whatever that protocol is, counsel has to follow it.

The Court's position is just because the Government elects to house this Defendant at an Immigration Detention Facility does not mean that access to counsel should be more difficult than it is at a BOP facility or at West Valley.

So, if defense counsel shows up and wants to talk to their client, just as they would at BOP, they should be allowed to do that. If their investigator shows up, since he is a Spanish speaker and they can't find an interpreter to accompany counsel, the investigator should be able to

access their client just as the investigator would at MDC. And the more inhibited that process is, the greater the risk to the Government that a Sixth Amendment violation is potentially going to be found.

So, it inures to the benefit of the Government if the Government desires to proceed with the prosecution, that the Government ensure that defense counsel have access to the Defendant.

Ms. Williams, you have gone above and beyond to try and ensure that, but every case is different. A Spanish speaker versus a non Spanish speaker in this case means that a paralegal or an investigator who is a Spanish speaker has to go, and if that suddenly invokes a different set of criteria than someone who's an attorney, that's a problem for purposes of the Sixth Amendment, because the attorney's agent acts on behalf of the attorney. So, it is potentially still a Sixth Amendment violation if they are restrained in their ability to effectively represent their client.

And, again, it's different, as you note. Immigration counsel is different than criminal defense counsel, but that differentiation needs to be taken into account for purposes of access to counsel by the Immigration officials who are presently holding Mr. Blandon-Saavedra. And, ultimately, if -- if there are problems, then that could inure to the detriment of this prosecution, but that

will be up to Judge Kato if and when that point ever arises. But access to counsel should not be a problem in the United States of America for purposes of a criminal prosecution, certainly in Federal Court. And, to the extent it is, I'm certain that those issues can be resolved. If the BOP can do it, then I'm certain that Homeland Security can do it too.

Anything further, Ms. Williams?

MS. WILLIAMS: No, your Honor, nothing further.

THE COURT: Ms. Sarsour, anything further?

MS. SARSOUR: Yes, your Honor. Just to clarify my point, I don't think that my investigator is a supplement to me. I still believe I should be able to take an interpreter to speak to my client --

THE COURT: You just --

MS. SARSOUR: -- at Adelanto.

THE COURT: -- said you can't get an interpreter to go with you.

MS. SARSOUR: Exactly. Right. And that is an issue, but I'm saying that if something -- there's two issues. One, my investigator can't go, who is a Spanish speaker, but I should be able to have access to my client. The Court suggested that he be housed locally, and we don't believe that Adelanto is local.

THE COURT: I did not suggest he be housed

locally. The Court has no control over where the Government houses a defendant. That's up to the Government. There might be consequences from that, but that's up to the Government. So, if the Government chooses to house the Defendant in Adelanto, that's the Government's choice. You are free to go to Adelanto.

What the Court has said in this hearing is that defense counsel must have, under the Sixth Amendment, access to her client. Ms. Williams has agreed. So, coordinate with Ms. Williams and with ICE for purposes of trying to communicate with your client. But he is not entitled to be housed locally. He was released on conditions, and he was taken into Immigration custody pursuant to a detainer. That is the Government's prerogative. But with that prerogative comes the right, if the Government wants to continue with a criminal prosecution, to ensure that the Sixth Amendment is followed, and it sounds like Ms. Williams is trying to ensure that it is. If, in fact, it's not, that's going to be a separate issue.

MS. WILLIAMS: And I did want to clarify one thing based on what defense counsel just represented on the record. The investigator can, in fact, go and see the client at this Immigration facility. It does require that she be cleared, and I know your Honor's position --

THE COURT: What does that mean?

MS. WILLIAMS: I -- I believe that she has to maybe call up there. I'm not -- I'm not entirely sure, but I know that they can make appointments the day before or up to 14 days prior. Maybe put her name on the list. I'm not sure. I'm happy to find out and get clarity on that point for defense counsel certainly, but I do just want to put on the record her investigator is allowed to go, and just like -- just like prisons have visiting lists and --

THE COURT: We're not talking about prisons. I just want to clarify that, Ms. Williams.

MS. WILLIAMS: Or --

THE COURT: We're talking about pretrial --

MS. WILLIAMS: Pretrial --

THE COURT: -- detention.

MS. WILLIAMS: -- detention centers. I apologize.

THE COURT: That's all right. Even though in the Federal world, pretrial detention is often run by the Bureau of Prisons, and so MDC is operated by the Bureau of Prisons, but it is not a prison. It is a pretrial detention center.

MS. WILLIAMS: I misspoke. Yes.

THE COURT: And, so, pretrial is going to be different than post-conviction serving a sentence. But pretrial the Sixth Amendment is at the forefront. Those detainees must have access to their attorneys.

MS. WILLIAMS: Yes, your Honor. And I --

THE COURT: And -- and I'm not -- look, what I am saying is that the United States operates both of these institutions. The United States has elected to house pretrial detainees at both of these institutions. The access to counsel, therefore, by pretrial detainees at both of these institutions must be the same.

MS. WILLIAMS: I don't -- okay. If you're saying that that is what the case law -- I --

THE COURT: I'm not saying that's the case law. I'm saying that if the Sixth Amendment says you have a right to talk to your lawyer and your lawyer has an investigator who speaks Spanish and the investigator goes up to speak to the client and is turned away because he didn't make an appointment two days in advance, whereas in downtown LA, he doesn't have to do that, then I think that's going to be a salient fact for purposes of a motion to dismiss. That's what I'm saying, because there's no reason for it. What is the reason? Why is it in downtown LA in a BOP facility there's one level of access but in Adelanto at a Homeland Security run facility, there's another level of access for the same precise category of detainee?

MS. WILLIAMS: I'm not sure they're the same level of detainee. One is an Immigration facility. So, I do think it's like slightly different. But I do understand what your Honor is saying.

THE COURT: Okay. That's all I'm saying is that for a pretrial detainee, where the Government is actively prosecuting a case, seemingly, the access by counsel, and that means counsel's investigators and counsel's interpreters to the extent they need one, it should be consistently the same. And if it's not, that potentially is going to be an issue if defense counsel says, Well, I can't access my client.

Now, defense counsel's going to have to say that their inhibition rose to the level that it violated the Sixth Amendment. I don't know what those facts are, and that's up to defense counsel. All I'm saying is there is nothing that would seem to support any kind of a differentiation based on where geographically a defendant is housed in this District and whether it's by a separate department of the United States Government.

Counsel should -- should be able to access their client for purposes of preparing a defense. And if they can't, potentially, that violates the Sixth Amendment. That's all I'm saying. So, hopefully, we won't get to that point. We'll figure out what the wrinkles are, and we'll smooth them over.

MS. WILLIAMS: Well, based on defense counsel's representation, that motion will be filed this week. So, I think we're already there.

THE COURT: All right. Well, then there we are. But in the meantime, that doesn't help the Defendant, and it doesn't resolve the issue for purposes of the next time there's a wrinkle. So, for purposes of the Government ensuring that the Constitution is followed, seemingly, the issue needs to be resolved one way or the other.

MS. WILLIAMS: Yes, your Honor.

THE COURT: Ms. Sarsour, anything further?

MS. SARSOUR: No, thank you, your Honor.

THE COURT: Anything further, Ms. Williams?

MS. WILLIAMS: No, your Honor. Thank you.

THE COURT: Thank you. We are adjourned.

(Proceedings concluded.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Jordan Keilty
Transcriber

10/7/25
Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.