CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHAD PENNINGTON (Bar No. 354831)
(E-Mail: Chad_Pennington@fd.org)
AYAH A. SARSOUR (Bar No. 340280)
(E-Mail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOSEPH BLANDON-SAAVEDRA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH BLANDON-SAAVEDRA <br><br> Defendant. | Case No. 5:25-cr-310-KK-1 <br><br> **Defendant's Expedited Motion for Release from Immigration Custody or Dismissal of the Indictment.** <br><br> **Status Conference:** <br> **November 6, 2025,** <br><br> **Trial Date:** <br> **November 17, 2025** |

Defendant Joseph Blandon-Saavedra, by and through counsel of record, Deputy Federal Public Defenders, Chad Pennington and Ayah Sarsour hereby moves for forthwith release from executive branch ("ICE") custody or dismissal of the instant indictment under the Fifth and Sixth Amendments. As set forth below, notice has been provided to the government regarding the instant motion.

Mr. Blandon-Saavedra seeks a hearing on the matter at the Court's earliest convenience given the impending trial date.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 9, 2025     By /s/ Chad Pennington
CHAD PENNINGTON
Deputy Federal Public Defender

## I. Introduction

This case constitutes a familiar, if not endemic recent abusive process in this District. The government commences a criminal proceeding against a defendant. At the initial appearance, the presiding magistrate judge orders that defendant released pretrial, concluding that conditions can be set under the Bail Reform Act, 18 U.S.C. § 3142(c), (g). After the pretrial release order is issued, the executive branch electively takes that person into immigration custody and places them in an immigration facility. This case is no different.

Here, the moment the government received an adverse release ruling in the very criminal process it had commenced against Mr. Blandon-Saavedra, it proceeded with immigration custody. Mr. Blandon-Saavedra, though ordered released in this criminal proceeding, is now in immigration custody at the Desert Annex facility in Adelanto. He cannot competently prepare for his trial placed in a distant immigration custodial facility.

The Court is familiar with these challenges and the government's resort to immigration custody after a local magistrate judge has ordered the defendant released pretrial. *See United States v. Gutierrez-Contreras*, 5:25-cr-121-KK (C.D. Cal. 2025). Mr. Blandon-Saavedra joins those other defendants.

In this criminal proceeding, if the government disagreed with the pretrial release order, it could have filed, a request for review under 18 U.S.C. § 3145 before this Court. Through that statute, the government has a procedural remedy. It elected not to.

We are close to a trial date. Mr. Blandon-Saavedra, as set forth below, cannot competently and fairly prepare for a trial while detained at the Adelanto immigration facility. The undersigned's office, as set forth, simply cannot obtain the requisite level of client access necessary to prepare a matter for trial. Interpreters cannot be sent to the facility. Investigators

3

cannot gain access. Discovery cannot be reviewed promptly and in-person without interpreter assistance. The facility's own rules indicate the facility is for immigration counsel, not criminal counsel. Mr. Blandon-Saavedra, because the executive branch has elected to place him in immigration custody, should not be forced to proceed to trial under these circumstances. As the Court is aware, to prepare competently a matter for trial takes constant client visits and access and assiduous discovery review (in this case with a Spanish language interpreter). The Adelanto immigration facility cannot accommodate this constitutionally required level of detainee access.

To that end, and to be clear, this is a crisis of the government's making. It has a choice. If it wishes to proceed to trial in this matter, then it can follow the release order issued in this case. Release would enable Mr. Blandon-Saavedra to prepare for trial consistent with the Fifth and Sixth Amendments. If it would rather proceed in immigration court, if the removal process has greater executive branch priority, that is its choice. However, what it cannot do, is simply expect the defense and the Court to accommodate its decision to hold Mr. Blandon-Saavedra at an immigration facility from which his defense cannot be reasonably fashioned. It is manifestly unreasonable for the government to commence a criminal process, and expect the defense and the Court to accommodate its decision to not adhere to the rulings issued in the very prosecution it started.

The government has brought this case, and Mr. Blandon-Saavedra's remote immigration custody comes at a time when Spanish-language interpreter services are well above capacity in the District given the surge of immigration related case. The government should not get the benefit of creating the strain on resources relating to Spanish-speaking criminal defendants and simultaneously suggest the defense and the Court deal with the disruption in representation and judicial operations. Indeed, the

4

government will not be laboring under a similar restriction. It will have access to its agents without disruption and in a typical fashion at trial. It is unfair the defense will not have access to its client as ordered by the Court and in a similar typical fashion.

Dolores Martin is the senior Spanish-language interpreter at the undersigned's office, with a career spanning over 30-years. Her declaration aptly describes the current crisis and limitation in Spanish-speaking translation services. The undersigned's office has three active Spanish-language interpreters. With the surge in immigration related offenses the undersigned's office cannot provide Spanish language translation to detainees housed at Adelanto. *See generally* Decl. of Delores Martin.

In addition, the undersigned's staff, on September 30, 2025, contacted nearly 10 contract Spanish-language interpreters in the Riverside, California area, for a possible arranged visit with Mr. Blandon-Saavedra at the facility on October 3, 2025. No contract interpreters were available for an in-person visit. *See generally* Decl. of Chad Pennington. Contract interpreters cannot be relied upon to bridge the constitutional gap engendered by the government's elective placement of Mr. Blandon-Saavedra into immigration custody.

Moreover, the undersigned's office has regularly received information from Adelanto that scheduled appointments require completion of the DHS Form-G28, and any interpreter will be subject to "ICE" approval through the G-28 Form procedures. *See United States v. Gutierrez,* 5:25-cr-121-KK (C.D. Cal. 2025), ECF No. 24, Ex. A. Indeed, the facility's website states that a request for a client appointment must include a scan of the attorney's completed DHS Form-G28. *See* https://www.ice.gov/detain/detention-facilities/desert-view-annex (last accessed October 9, 2025). Furthermore, the DHS Form G-28, *see* Ex. A, does not apply to the undersigned's

5

representation in federal criminal court, it is an immigration representation form. Instead, specifically, the DHS Form G-28 applies as the from "used to establish the eligibility of an attorney or accredited representative to represent a client (applicant, petitioner, requestor, beneficiary or derivative, or respondent) *in an immigration matter before U.S. Department of Homeland Security* (DHS)." *Id.* at 2 "What is the Purpose of Form G-28" (emphasis added). The undersigned cannot appear on Mr. Blandon-Saavedra's behalf before the immigration tribunal, and thus it is not at all apparent that he would be granted permission to enter the facility as an attorney using the immigration Form G-28.[1] As a facility, Adelanto is designed for immigration counsel and cases in mind, not criminal, constitutional litigation.

## II. Procedural History and Background

On September 5, 2025, the government filed a complaint charging Mr. Blandon-Saavedra with two counts of assaulting a federal officer with a deadly and dangerous weapon, in violation of 18 U.S.C. § 111(a)(1), (b). *See* Compl., *United States v. Blandon-Saavedra*, No. 5:25-mj-00601-DUTY-1 (C.D. Cal. Sept. 5, 2025), ECF No. 1. That same day, Mr. Blandon-Saavedra

---

[1] DHS Form G-28 defines legal representation under 8 § C.F.R. 1.2. The terms "Practice, Representation, and Preparation" of the immigration matter appear to preclude the undersigned from G-28 status:

Practice means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with DHS.

Preparation, constituting practice, means the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers, but does not include the lawful functions of a notary public or service consisting solely of assistance in the completion of blank spaces on printed DHS forms, by one whose remuneration, if any, is nominal and who does not hold himself or herself out as qualified in legal matters or in immigration and naturalization procedure.

*Representation before DHS includes practice and preparation as defined in this section.*

6

made his initial appearance before Magistrate Judge Sheri Pym. *See* Minutes of Initial Appearance, *United States v. Blandon-Saavedra*, No. 5:25-mj-00601-DUTY-1 (C.D. Cal. Sept. 5, 2025), ECF No. 4. After a contested detention hearing, the Court set release conditions, including in the amount of a $10,000 appearance bond and ordered his forthwith release. *Id.* Despite the Court's release order, Mr. Blandon-Saavedra was not released on bond and was instead taken into custody by United States Immigration and Customs Enforcement ("ICE").

At the direction of Deputy Federal Public Defender Ayah Sarsour, Defense Investigator Elizabeth Aguilar traveled to the Adelanto Detention Center, 10400 Rancho Road, Adelanto, California 92301, on September 18, 2025, to visit Mr. Blandon-Saavedra. *See* Decl. of Elizabeth Aguilar ¶ 1. Upon arrival, Investigator Aguilar presented her Federal Public Defender credentials, California driver license, and an attorney letter advising that the Office of the Federal Public Defender represented Mr. Blandon-Saavedra in his federal criminal case. *Id.* ¶ 1. Facility staff denied her access, stating that because she was not an *immigration attorney* she could not meet with the client except during public visiting hours, and prohibited her from bringing *case materials* into the facility. Id. ¶¶ 5–6.

On September 22, 2025, defense counsel, Deputy Federal Public Defender Ayah Sarsour, notified Assistant United States Attorney Courtney N. Williams that her investigator had been denied access to Defendant at the Adelanto Detention Center. *See* Status Report Regarding Defendant's Access to His Attorney ¶ 4 & Ex. A at 1-2, *United States v. Blandon-Saavedra*, No. ED CR 25-310-KK (C.D. Cal. Oct. 3, 2025), ECF No. 16. Ms. Sarsour requested that the government intervene to secure confidential legal visitation and communication consistent with a defendant's rights under the Fifth and Sixth Amendments. *Id.* Later that day, AUSA Williams provided

7

defense counsel with procedures for scheduling attorney visits, legal calls, and video appointments. *Id.* Ex. A at 4-5 (email from Courtney N. Williams to Ayah Sarsour, Sept. 23, 2025, 2:05 PM). Ms. Sarsour responded that her office "should not have to navigate unnecessary obstacles" and requested that Adelanto "remove all restrictions" on defense visits. *Id.* Ex. A at 3.

On September 24, 2025, defense counsel informed the government that, "in light of [the defendant's] placement at Adelanto and the current restrictions his immigration confinement imposes," the defense intended to move for dismissal, citing an inability to effectively prepare for a preliminary hearing or trial. *Id.* Ex. B (email from Ayah Sarsour to Courtney N. Williams, Sept. 24, 2025, 11:06 AM). That same day, the grand jury returned an indictment charging Mr. Blandon-Saavedra with two counts of assaulting, resisting, or impeding a federal officer using a dangerous or deadly weapon, in violation of 18 U.S.C. § 111(a)(1), (b). *Id.* ¶ 10.

On September 30, 2025, Mr. Blandon-Saavedra was arraigned on the indictment before Magistrate Judge David T. Bristow and entered pleas of not guilty. *See* Arraignment Hr'g Tr. at 3-8, *United States v. Blandon-Saavedra*, No. ED CR 25-00310-KK-1 (C.D. Cal. Sept. 30, 2025), ECF No. 18. At that hearing, defense counsel informed the Court that Mr. Blandon-Saavedra remained in ICE custody despite being on bond in his federal case and that the defense had been unable to meet with him at Adelanto. *Id.* at 9-10. The Court ordered the government "to ensure that the Defendant is made available to his counsel for purposes of his defense of this matter, which means that he must be housed locally and made available for purposes of meeting with his attorney for purposes of attending criminal action." *Id.* at 10. The Court set a status conference for October 6, 2025, to confirm that defense counsel had been afforded access to her client. *Id.* at 11.

On October 6, 2025, the Court held the status conference as scheduled.

*See* Status Conf. Tr., *United States v. Blandon-Saavedra*, No. ED CR 25-00310-KK-1 (C.D. Cal. Oct. 6, 2025), ECF No. 20. At that hearing, defense counsel informed the Court that she continued to lack adequate access to Mr. Blandon-Saavedra and that her investigator had been denied a visit at Adelanto. *Id.* at 4-5, 12-14. The Court emphasized that "for purposes of detention of a defendant who is being prosecuted by the Government in Federal Court for a criminal offense, defense counsel and defense counsel's investigators and all of their agents have to have the same level of access to a defendant that they would have if that defendant were being held by the Bureau of Prisons." *Id.* at 6. The Court further observed that "for a pretrial detainee . . . the access by counsel . . . should be consistently the same," and warned that any impediment to that access could implicate the Sixth Amendment and potentially support dismissal of the charges. *Id.* at 20-21. At the hearing, defense counsel notified the Court that Mr. Blandon-Saavedra "is a Spanish speaker, and" the defense cannot obtain an interpreter to go to Adelanto. *Id.* at 12. The Court additionally noted:

> Th[e]same level of access has to happen at Adelanto for a defendant who is detained in this District for purposes of a criminal prosecution so that defense counsel can prepare for trial. And that's -- that was the purpose of this hearing, just to make sure that that level of access is occurring for purposes of ICE. . . . . Historically, ICE does not detain criminal defendants. Their custody subjects are of a different category with different rights. A criminal defendant has much greater rights than someone in Immigration custody. And, so, it is imperative that the custodians understand that difference and ensure that a defendant who is also being prosecuted in Federal Criminal Court is allowed access to their attorney on a far greater basis than if they were just going through the Immigration process.

*Id.* at 6-7.

### III. Legal Standard

The standard set forth in this Circuit: "If the government, by placing [a criminal defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (citing *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1170, 1180–81 (D. Or. 2012)). In a case where a criminal defendant has been ordered released pretrial by the judiciary after a contested detention hearing but is transferred too, or remains in, immigration ICE custody, *Trujillo-Alvarez* controls as articulated by *Santos-Flores*: "*If*, however, the Defendant is not released pending trial as directed by the Magistrate Judge pursuant to the BRA [(Bail Reform Act)], [such as the case here] the pending criminal prosecution of the Defendant *may not go forward*." 900 F. Supp. at 1170. "To hold otherwise would deprive the Defendant of his statutory right to pretrial release under the [Bail Reform Act] and possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel, respectively." *Id.*

### IV. Argument

Mr. Blandon-Saavedra has been more than inconvenienced. He is being forced to prepare for trial housed in an immigration facility with limited access to counsel and limited access to Spanish-language interpretation. Mr. Blandon-Saavedra's investigator was turned away by the Adelanto facility. *See* Aguilar Declaration. This would not happen if he was placed at MDC or any local criminal jails accustomed to housing criminal defendants. This would not be happening if he was released as ordered in this case.

Moreover, that the defense has been forced to consider the use of outside Spanish-language translation demonstrates the existence of limited Spanish-language interpreter services. The prosecution here comes at the very time the undersigned's office is over capacity on Spanish-language translation

services. Again, it is the government that has electively brought this matter before the Court by placing the defendant into immigration custody despite the release order. If the government requires Mr. Blandon-Saavedra to remain in immigration custody, then so be it, but representation in a parallel criminal proceeding under the circumstances is unreasonable if not impossible. The remedy should be dismissal.

In this case, Magistrate Judge Pym, has determined under the applicable standard, the Bail Reform Act, that Mr. Blandon-Saavedra does not present a risk of flight or any danger to any person or to the community if released while awaiting his upcoming trial. If the executive branch wants this matter to proceed in immigration court, that is its prerogative, and it may elect to forgo criminal prosecution. "If, however, the Executive Branch chooses to pursue the criminal prosecution . . . . under the pending charge, then [the defendant] must be . . . released pending trial on the pretrial release conditions previously imposed by Magistrate Judge [Pym] in accordance with the BRA." 900 F. Supp. 2d at 1180-81. "That is Defendant's statutory right under the BRA, and its continuing violation threatens Defendant's constitutional rights." *Id.* As in *Trujillo-Alvarez,* if however, he is not . . . released "by that date and time [as set by the Court] the pending criminal charge [should] be dismissed with prejudice." *Id.*; *see also United States v. Barrera-Omana,* 638 F. Supp. 2d 1108, 1112 (D. Minn. 2009); *United States v. Ailon-Ailon,* 875 F.3d 1334, 1339 (10th Cir. 2017); *see also United States v. Tapia,* 924 F. Supp. 2d 1093, 1098 (D.S.D. 2013).

The government cannot ensure that its placement of Mr. Blandon-Saavedra at Adelanto in immigration custody will not cause unreasonable trial disruptions and the diminution of Mr. Blandon's trial rights. Indeed, the placement already has.

**V.    Conclusion**

11

Mr. Blandon-Saavedra asks that the Court order enforce the validly issued pretrial release order and order his release from immigration custody, or dismiss the matter with or without prejudice. The record establishes the executive branch's decision to detain him limits the ability of the defense to adequately represent him and thus limits the Court's ability to try him.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 9, 2025    By /s/ Chad Pennington
CHAD PENNINGTON
Deputy Federal Public Defender

**CERTIFICATE OF COMPLIANCE AND DECLARATION**

I, Chad Pennington, counsel of record for the defendant, certify that this filing complies with the requirements of L.R. 11-6.1.

I, Chad Pennington, counsel of record, further certified under penalty of perjury that the representations in this filing are true and accurate.

DATED: October 9, 2025    By /s/ Chad Pennington
CHAD PENNINGTON
Deputy Federal Public Defender