BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
PETER DAHLQUIST
Assistant United States Attorney
Chief, Riverside Office
COURTNEY N. WILLIAMS (Cal. Bar No. 339301)
Assistant United States Attorney
Riverside Office
3403 Tenth Street, Suite 200
Riverside, California 92501
Telephone: (951) 368-1473
Facsimile: (951) 276-6202
E-mail: Courtney.N.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH BLANDON-SAAVEDRA,<br><br>Defendant. | ED CR No. 25-310-KK<br><br><u>UNITED STATES' OPPOSITION TO DEFENDANT'S EXPEDITED MOTION FOR RELEASE FROM IMMIGRATION CUSTODY OR DISMISSAL OF THE INDICTMENT</u> |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Courtney N. Williams, hereby files its Opposition to Defendant's Expedited Motion for Release from Immigration Custody or Dismissal of the Indictment.

//

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 15, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

PETER DAHLQUIST
Assistant United States Attorney
Chief, Riverside Office

*/s/ Courtney N. Williams*
COURTNEY N. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Joseph Blandon-Saavedra's request for expedited release from immigration custody should be denied because the United States Immigration and Customs Enforcement ("ICE") has both mandatory and discretionary authority under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq*, to detain defendant pending his removal proceedings. More specifically, ICE has discretionary authority under 8 U.S.C. § 1226(a)(1) to detain noncitizens pending removal. Further, the Court should also deny defendant's alternative request to dismiss the Indictment because the government can simultaneously institute removal proceedings and criminal proceedings against defendant and defendant has adequate access to counsel while in immigration custody.

## II. STATEMENT OF FACTS

On June 25, 2025, defendant was arrested for second degree burglary in Superior Court of California, San Bernardino County. At that time, ICE lodged a detainer that was served to San Bernardino Sheriff's Department. They declined to honor the detainer.

On September 4, 2025, defendant was the target of an immigration enforcement operation. (Dkt. 1, Compl. at ¶ 6.) On that day, immigration officers saw a man—who matched defendant's description and A-File photograph—leave his home and get inside a black Toyota Corolla that was parked in from of the home. (Id. at ¶ 9.) Immigration officers followed him and attempted to initiate a traffic stop. (Id. at 10.) When they attempted to stop defendant, agents tried to box him in with their vehicles. (Id. at ¶¶ 11-13.) One officer with lights on inside his vehicle stopped in front of

defendant. (Id.) Defendant stopped his vehicle. (Id.) Then another officer pulled up behind defendant and defendant reversed his vehicle into the officer's vehicle with the officer inside. (Id. at ¶ 12.) Then a third officer pulled up to the front of defendant's vehicle on the driver's side, and defendant drove his car straight into the third officer's vehicle while that officer was inside the vehicle. (Id. at 14.) Officers arrested defendant on the scene. Upon defendant's arrest, a second detainer was lodged.

On September 5, 2025, a complaint was filed charging defendant with assaulting, resisting, or impeding a federal officer using a dangerous or deadly weapon in violation of 18 U.S.C. § 111(a)(1), (b). (Dkt. 1.) At defendant's initial appearance, United States Magistrate Judge Sheri Pym ordered defendant released on a $10,000 appearance bond.

Upon defendant's release from the U.S. Marshal's custody, ICE acted on its detainer and took defendant into ICE custody pending removal proceedings. Defendant is currently housed at the Desert View Annex in Adelanto, California, with a scheduled immigration hearing in November 2025.

On September 24, 2025, an indictment was filed in this case, charging defendant with two counts of assaulting, resisting, or impeding a federal officer using a dangerous or deadly weapon violation of 18 U.S.C. § 111(a)(1), (b).

**III. LEGAL STANDARD**

Congress enacted the Bail Reform Act ("BRA"), 18 U.S.C. § 1342, to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released...." United States v. Salerno, 481 U.S. 739, 741

(1987). After a hearing, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

The INA, 8 U.S.C. § 1101, et seq., charges the United States Secretary of Homeland Security with the administration and enforcement of the INA and other immigration laws. Under the INA, ICE is authorized or, in certain cases, required, to detain individuals who are subject to removal. See 8 U.S.C. §§ 1226(a)(1) (authorizing discretionary detention pending removal); 1226(c) (requiring mandatory detention based on prior criminal convictions); 1231(a)(2) (requiring mandatory detention based on final order of removal).

## IV. ARGUMENT

### A. ICE Has Discretionary Authority to Detain Defendant

The Bail Reform Act, ("BRA"), governs detention in criminal cases. See 18 U.S.C. §§ 3142 & 3143. The Immigration and Nationality Act ("INA"), governs detention of noncitizens in civil removal proceedings. See 8 U.S.C. §§ 1226, 1231. They are "different statutory and regulatory regime[s]." United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). "Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." United States v. Vasquez-Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019). Accordingly, "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a

BRA release determination." United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018). "No court of appeals . . . has concluded that pretrial release precludes pre-removal detention," United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (following Veloz-Alonso and Vasquez-Benitez), because nothing in the BRA prevents DHS/ICE "from exercising its independent statutory authority to detain an arriving noncitizen pending removal," United States v. Ventura, 747 F. App'x 20, 22 (2d Cir. 2018).

Defendant's arguments premised on United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012), fail because Trujillo-Alvarez is not binding precedent, it ignores the independent detention authority prescribed by the INA, and it is contrary to several circuit court decisions.[1] See United States v. Lett, 944 F.3d 467, 471 (2d Cir. 2019) ("the BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes."); United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (Pre-trial release does not preclude pre-removal detention, and the BRA and INA do not conflict); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018) ("ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination."); see also United States v. Pacheco-Poo, 952 F.3d 950, 953 (8th Cir. 2020); United States v. Urbina-Escoto, 2020 WL 6147024 (W.D. Wash. Oct. 20, 2020).

[1] It does not appear the Ninth Circuit Court of Appeals has ruled on this issue.

In United States v. Lett, the defendant was a citizen of Trinidad and Tobago and was arrested at John F. Kennedy International Airport after Customs and Border Protection ("CBP") found 2.12 kilograms of cocaine in his suitcase. 944 F.3d at 469. "CBP paroled Lett into the United States for criminal prosecution and transferred him to the custody of the Bureau of Prisons ("BOP"), and the government filed a criminal complaint charging Lett with importing cocaine . . . ." Id. Meanwhile, ICE lodged an immigration detainer against him. Id. Ultimately, the district court ordered Lett's release pending his criminal case. See id. Accordingly, ICE acted on the lodged detainer and took Lett into ICE custody following his release from BOP, and initiated removal proceedings. See id. "Lett filed a motion to dismiss the indictment in his criminal case, arguing that his continued detention by ICE violated the BRA." Id. The district court dismissed the Indictment holding that the government needed to decide whether to criminally prosecute or remove Lett but could not proceed simultaneously. See id. at 469-470. The Second Circuit vacated this decision finding that the BRA and the INA "serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention," and therefore "the government's authority to detain an alien pursuant to the INA" does not disappear merely because he cannot be detained under the BRA pending his criminal trial. See id. at 470.

Similarly, here, ICE acted on the lodged detainer and took defendant into ICE custody pursuant to its detention authority under the INA. More specifically, ICE has discretionary authority to detain Defendant pending his removal proceedings. The government is not required to choose what proceedings to pursue and may pursue both

removal and criminal proceedings simultaneously. To the extent defendant is concerned that his detention pending removal proceedings will infringe on his constitutional rights, this argument is premature, as discussed below, defendant has not made a good faith showing that he has not had adequate access to defense counsel.

**B. Defendant Has Reasonable Access to Counsel**

Criminal defense attorneys are permitted to see their clients at Desert View Annex by appointment or walk-in. (See Dkt. 16, Status Report, Declaration of Courtney N. Williams "Williams Decl.", at ¶ 9; Exhibit A, E-mail correspondence to Status Report.) Appointments are available seven days a week (weekends and holidays included) and can be made up to two weeks in advance. (See Ex. A.) In-person attorney visits are not subject to the one-hour time limit. (See id.) Criminal defense attorneys can also meet and communicate with their clients through video appointments and telephone calls. (Id.) As for paralegals, investigators, and translators, they must receive clearance through ICE, just as they are required to do at BOP facilities. (See Exhibit B, BOP's Pretrial Detention Legal Access Handbook at 8-9.)

Contrary to defendant's arguments, Desert View Annex's attorney visitation policy is not overly restrictive to constructively deny defendant's access to counsel and mirrors the rules at the Metropolitan Detention Center ("MDC") in many of respects. (See Ex. B at page 8; Def. Mot. at 10.)

First, the distances from Riverside to MDC and from Riverside to Desert View Annex are similar. MDC is approximately 57 miles from downtown Riverside, and the Desert View Annex is approximately 57 miles. While defense counsel may be inconvenienced by the distance

he must travel to see defendant, defendant and counsel are only entitled to "reasonable" access and not the "most convenient access." In fact, several courts have rejected defendant's argument, including the Ninth Circuit. See United States v. Lewis, 873 F.2d 1279, 1280 (9th Cir. 1989) (finding that defendant was not denied access to counsel because the 120-mile distance between him and his counsel did not actually or constructively deny him the assistance of counsel altogether); Ekene v. Cash, 2012 WL 4711723, at *12 (C.D. Cal. May 14, 20212)(citing United States v. Lewis); Pino v. Dalsheim, 558 F. Supp. 673, 675 (S.D.N.Y. March 8, 1983)(noting that several courts have noted that "travel inconvenience of an attorney. . . . does not reach the level of a constitutional violation").

Second, both facilities require that investigators be cleared by the facility before meeting with clients. (See Ex. B at 8-9) (requiring that non-attorney members of a defense team to fill out a BP-A0243 form to be approved to visit clients at Department of Bureau facilities). Here, because investigators are not attorneys, Desert View Annex requires that investigators be cleared by ICE before they can meet with clients. This practice is no different than the practice at MDC's facility, which requires that defense attorneys fill out a BP-A0243 form on behalf of their investigators once a year.

Third, defense counsel's purported limited access to Spanish-language interpretation is not relevant. Defendant fails to cite to any case law that states that a defense counsel inability to secure a Spanish-interpreter is somehow an issue for the executive branch. Moreover, defendant fails to show any evidence that a good-faith effort was made to secure an interpreter. Defense counsel attaches a

declaration to defendant's expedited motion, where he outlines his attempt, on a single day, September 30, 2025, to secure ten Spanish language interpreters for another single day, October 3, 2025. In the emails he attached to the declaration, it appears that approximately six of the nine interpreters did not respond to the request email, and it appears that the interpreters were not asked about their availability on any dates other than October 3, 2025.

While these emails show that it may be difficult to secure a Spanish-language interpreter, they do not show that it is impossible for defense counsel to obtain an interpreter. At best, these emails provide grounds for a continuance--they do not provide grounds for a dismissal.

Overall, defendant is not precluded from seeing defense counsel and may do so either in person or remotely multiple days a week. Additionally, the clearance for investigators, translators and paralegals is not overly burdensome as this requirement is similar to other detention facilities. Put simply, defendant has reasonable access to counsel, and he has not shown otherwise.

**C. Dismissal is Inappropriate Without a Showing of Injury and Prejudice**

In United States v. Morrison, the remedy for a violation of a defendant's Sixth Amendment right to counsel "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." See United States v. Morrison, 449 U.S. 361,364 (1981); see also United States v. Zarate, 2019 WL 6493927 (D. Nev. Dec. 2, 2019). While the Court in Morrison did leave the door open for potential dismissal on a record that reflects continuing prejudice, see Morrison, 449 U.S. at 367, fn. 2,

defendant here has not shown continuing prejudice, let alone actual injury.

The facts in Zarate are virtually identical to the facts in this case in that ICE detained Zarate pending removal proceedings, following released under the Bail Reform Act. See Zarate, 2019 WL 6493927 at *1. However, in Zarate, defendant was prevented from seeing her defense counsel for a short period while in ICE custody. Defendant in Zarate made virtually the same arguments that defendant is making in this case, and the Court rejected them all. The Court held that dismissal of the indictment was inappropriate citing United States v. Morison.

Here, as previously discussed, defendant has access to counsel. Moreover, any argument that certain restrictions deny meaningful access are still premature considering that as of the date of the filing, defense counsel has not shown that they have attempted to visit defendant at Desert View Annex, and it appears that the defense's investigator has only attempted to visit defendant on one occasion.

Therefore, the defense should be required to make a good faith effort, not just an email from defense counsel outlining his efforts on one single day to gain access to defendant and provide a factual basis for their inability to do so, to the extent that is the case. Even if defendant could make this showing, defendant must also show demonstrable prejudice warranting the drastic remedy of dismissal.

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny defendant's expedited request for release from ICE custody or dismissal of the Indictment.