CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHAD PENNINGTON (Bar No. 354831)
(E-mail: Chad_Pennington@fd.org)
AYAH A. SARSOUR (Bar No. 340280)
(E-mail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defenders
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOSEPH BLANDON-SAAVEDRA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH BLANDON-SAAVEDRA

Defendant.

Case No. 5:25-cr-310-KK-1

**Defendant's Supplement to the Expedited Motion for Release from Immigration Custody or Dismissal of the Indictment.**

**Status Conference: November 6, 2025,**

**Trial Date: November 17, 2025**

Defendant Joseph Blandon-Saavedra, by and through counsel of record, Deputy Federal Public Defenders, Chad Pennington and Ayah Sarsour hereby moves for forthwith release from executive branch ("ICE") custody or dismissal of the instant indictment under the Fifth and Sixth Amendments and the Court's supervisory authority under Federal Rule of Criminal

/ / /

/ / /

Procedure 48(b). This supplement is offered pursuant to the Court's scheduling order. *See* ECF No. 34.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 21, 2025 By /s/ Chad Pennington

CHAD PENNINGTON
Deputy Federal Public Defender

By /s/ Ayah A. Sarsour

AYAH A. SARSOUR
Deputy Federal Public Defender

## TABLE OF CONTENTS

I. Procedural History and Background ..... 1
II. Legal Standard ..... 6
III. Argument ..... 10
  A. The Government's Actions Have Resulted in Continuing Violations of the Defendant's Right to Counsel ..... 12
  B. The Government's Use and Choice of Immigration Custody Has Undermined Judicial Authority and the Defendant's Right to Pretrial Release ..... 13
IV. Conclusion ..... 14

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Drope v. Missouri*,
420 U.S. 162 (1975) ........................................8

*Faretta v. California*,
422 U.S. 806 (1975) ........................................7

*Farrington v. Tokushige*,
273 U.S. 284 (1927) ........................................7-8

*Geders v. United States*,
425 U.S. 80 (1976) ........................................10, 12

*Maine v. Moulton*,
474 U.S. 159 (1985) ........................................12

*McMann v. Richardson*,
397 U.S. 759 (1970) ........................................12

*Meyer v. Nebraska*,
262 U.S. 390 (1923) ........................................8

*United States v. Adams*,
2025 WL 2713262 (D.D.C. Sept. 24, 2025) ........................................9

*United States v. Bahamonde*,
445 F.3d 1225 (9th Cir. 2006) ........................................11

*United States v. Barrera-Moreno*,
951 F.2d 1089 (9th Cir. 1991) ........................................7

*United States v. Conception*,
651 F. Supp. 3d 1158 (C.D. Cal. 2023) ........................................11

*United States v. Hasting*,
461 U.S. 499 (1983) ........................................8, 14

*United States v. Johnson*,
248 F.3d 655 (7th Cir. 2001) ........................................8

## TABLE OF AUTHORITIES

*United States v. Mosquera*,
816 F. Supp. 168 (E.D. N.Y. 1993) ....8, 10

*United States v. Murguia-Rodriguez*,
815 F.3d 566 (9th Cir. 2016) ....9, 10

*United States v. Santos-Flores*,
794 F.3d 1088 (9th Cir. 2015) ....6

*United States v. Si*,
333 F.3d 1041 (9th Cir. 2003) ....8

*United States v. Trujillo-Alvarez*,
900 F. Supp. 2d 1167 (D. Or. 2012) ....6, 7

**DOCKETED CASES**

*United States v. Blandon-Saavedra*,
No. 5:25-cr-310-KK-1, ECF No. 35 (C.D. Cal. Oct. 17, 2025) ....1, 2, 15

**STATUTES**

18 U.S.C. § 3006A ....10

28 U.S.C. § 1827 ....10

Bail Reform Act (18 U.S.C. § 3142) ....7, 12, 13

Laken Riley Act ....11

**U.S. CONSTITUTION**

Fifth Amendment ....7

Sixth Amendment ....*passim*

**OTHER**

Federal Rule of Criminal Procedure 48(b) ....13

U.S. Census Bureau, *Language Use in the United States*: 2011
(Aug. 2013) ....9

## I. Procedural History and Background

On October 17, 2025, the parties appeared before the Court for a hearing on the Expedited Motion for Release from Immigration Custody or Dismissal of the Indictment. ECF No. 29. During the hearing, the Court expressed concern regarding defense counsel's ability to access Defendant Mr. Blandon-Saavedra, who remains detained at the Adelanto facility while awaiting trial in this matter. During the hearing, the Court stated:

> So, I think that it would be helpful to have further supplemental declarations in the record. But Ms. Williams, I can tell you that if what has been represented to me by defense counsel is correct, and if it continues to be correct moving forward with our looming trial date one month from today, I do think it is very likely that this case ends up getting dismissed. We've had a representation by Mr. Pennington as an officer of the court that he and Ms. Sarsour are already IAC. And I think that based upon the record, the fact that we've had a case pending since September 22nd, that they have not been able to consult with their client in any meaningful way for over half the time of their speedy trial time. That record in and of itself would support dismissal. And again, I realize this is not your particular decisions that are leading us to this, but it is true that if the government wants to make it more difficult for counsel to fulfill the Sixth Amendment, the government is responsible for the consequences that fall from that.
>
> And here the government could have honored Judge Pym's order of forthwith release. They could have allowed Mr. Saavedra to be residing in a place with very strict conditions where a federal judge has decided those conditions were sufficient to adequately address both any issues of flight as well as any issues of danger. But rather than do that, they've decided to put in place extra hurdles. And in this particular case, it does appear that those hurdles are going to result in a continuing Sixth Amendment violation. So, if the government wants to do that, the government bears the consequences that fall from it.

*United States v. Blandon-Saavedra*, No. 5:25-cr-310-KK-1 (C.D. Cal. Oct. 17, 2025) (statement of the Court at 12:03–14:18) (ECF No. 35) (audio recording on file with the Clerk of Court). Following argument, the Court issued verbal orders directing the parties to meet and confer regarding the defense's

access to the facility, and in addition, the defense was ordered to supplement the record. Specifically, the Court instructed defense counsel to provide a list of all individuals who would attend client meetings and a list of materials necessary for trial preparation. The Court further ordered the government through government counsel to coordinate with Enforcement and Removal Operations (ERO) to ensure defense counsel's access to Mr. Blandon-Saavedra for purposes of discovery review and trial preparation. Specifically, the Court stated:

> Alright. And again, I'm going to ask that the three of you consult with one another to get a very detailed plan as to when, with whom, and with what materials defense counsel would like to enter the facility. And then Ms. Williams, your task is to see whether or not the facility is agreeable to guarantee that that will be permitted.

*Blandon-Saavedra*, No. 5:25-cr-310-KK-1, at 12:03–14:47 (ECF No. 35).

That same day, at approximately 12:58 p.m., defense counsel provided written notice to the government outlining their plan to begin *daily* legal visits to Adelanto starting that day, Friday October 17, 2025, and continuing throughout the following week. Counsel identified the visiting team members of Chad Pennington, Ayah, Sarsour, and Elizabeth Aguilar and listed use of standard trial preparation materials, including encrypted laptops, external drives containing discovery, and client case files. The government acknowledged receipt of the defense's correspondence and confirmed that it would contact its case agent and ERO and inform them of the upcoming defense visits.

The defense then immediately began preparations for client visits given the trial date urgency. The first visit attempted was Friday afternoon, on October 17, 2025. *See* Decl. Of DFPD Sarsour ¶ 5. However, the visit was canceled because the travel time exceeded two hours and twenty minutes one way by car. *See id.* During the weekend of October 18–19, 2025, the defense

attempted two further visits. On Saturday October 18, 2025, Investigator Elizabeth Aguilar arrived at the Adelanto ICE Processing Center by car, at approximately 9:55 a.m., and presented her Federal Public Defender credentials and an attorney letter verifying the office's appointment by this Court. Decl. of DFPD Investigator Elizabeth Aguilar ¶¶ 3–7 (Oct. 20, 2025). Facility staff denied her legal access, informing her that, as an investigator, she could not conduct a contact legal visit, review discovery, or bring legal materials or a laptop into the facility. In effect, Adelanto staff stated that she could bring nothing into the facility. *See id.* Ms. Aguilar was told that if she was able to visit with the client, the visit would be as a non-contact "public" visit, which would not allow confidential communication with the client or review of case materials. After waiting nearly two hours, she was forced to leave without meeting with Mr. Blandon-Saavedra. *See id.*

The following day, Deputy Federal Public Defender Ayah A. Sarsour attempted to meet with Mr. Blandon-Saavedra at Adelanto. She arrived at 12:09 p.m. and was eventually permitted entry after nearly an hour's delay. *See* Decl. of DFPD Sarsour ¶ 4 (addressing Oct. 19, 2025, visit). Ms. Sarsour was permitted to bring her case file and electronic discovery materials, however, she was unable to communicate effectively with her client due to the lack of a Spanish-language interpreter. *Id.* at ¶¶ 6–9. She attempted to use a translation application, but it failed to provide adequate communication, preventing any meaningful discovery review or trial preparation. *Id.* at ¶¶ 7–11.

During that visit, Mr. Blandon-Saavedra provided Ms. Sarsour a handwritten letter in Spanish explaining that he had been placed in solitary confinement at Adelanto on the evening of October 16, 2025, prior to the Court hearing the following day, and remained there overnight without a bed. He further stated that he could not send letters or make phone calls to

his attorneys because he lacked funds and that he was experiencing physical pain and distress. Ms. Sarsour translated the letter after leaving the facility and confirmed that her client's confinement conditions, and communication barriers were as described. *Id.* at ¶¶ 12–13.

Branch Chief Young J. Kim corroborates these access barriers. He represents to the Court that the Federal Public Defender's Office cannot obtain Spanish-language interpreters to travel to Adelanto despite contacting multiple interpreters beginning October 17, 2025. Decl. of Young J. Kim ¶ 3 (Oct. 20, 2025)). Mr. Kim explains that the ongoing government shutdown has restricted available funding for contract interpreter services. *Id.* at ¶ 5. He further notes that at federal and local detention centers such as West Valley Detention Center, Central Detention Center, and Metropolitan Detention Center, defense counsel and investigators are routinely granted private meeting rooms without the need for advance coordination with the prosecution. Those conditions, he explains, are essential for daily client contact during trial preparation. *Id.* at ¶¶ 6–7. The record shows this level of client and case access, provided by traditional criminal pretrial detention centers cannot be replicated by Adelanto's restrictive policies.

As of the date of this filing, defense counsel continues to experience substantial interference with access to Mr. Blandon-Saavedra. On October 17, 2025, immediately after the Court's status conference, the defense contacted nearly *20* Spanish-language interpreters to provide translation services for Mr. Blandon-Saavedra from "8:00am - 12:00pm, 12:00 pm - 4:00 pm, or 4:00pm - 8:00pm. We are available any day of the week beginning today, October 17, 2025, until Sunday, October 26, 2025." Ex. A. Not unexpectedly, no interpreter was available during this extended period.

/ / /

In addition, *assuming arguendo* interpreters may become available in the future, Adelanto's interpreter policy is simply not workable considering the defense's trial needs. Adelanto's interpreter policy, as stated by Adelanto Supervising Officer I. Palacios: "For interpreter services, as they do not have a state bar card, they will need prior clearance. We ask that we are notified *three business days* in advance of the interpreter services to allow proper clearance and notifications to be made. We require their full name, copy of an ID, and who they will see that day. We will run checks on the individual and provide you and the GEO staff notification of the approval." Ex. B. The defense cannot be forced to provide three business-days advance notice for interpreter clearance during the later stages of its trial preparation. Again, not unexpectedly the private contractor GEO's policies reflect immigration, not criminal, proceeding priorities rather than criminal representation and the defense should not be saddled with meeting GEO's private clearance concerns because the government favors proceeding in an immigration tribunal. Again, it bears repeating, this entire motion and the Court's superintendence of the access issue stem entirely from the government's voluntary decision to opt-out of following the release order issued here in the very criminal proceeding it commenced.

The government's placement of the Defendant in an immigration detention facility operated by a private contractor (the GEO Group), rather than a local criminal detention facility, has materially obstructed trial preparation and deprived him of effective assistance of counsel guaranteed under the Sixth Amendment to the United States Constitution. The cumulative effect of these restrictions constitutes an ongoing violation of the defendant's constitutional rights.

Trial in this matter is set for November 17, 2025. Mr. Blandon-Saavedra will not waive his constitutional and statutory speedy trial rights,

right to effective assistance of counsel, right to present and prepare a proper, fulsome defense, and right to meaningfully participate in his own defense, merely to ease the government's voluntary decision to proceed before two distinct and separate tribunals. He maintains his innocence and persists in his speedy jury trial right. Accordingly, the defense maintains its request for immediate release from immigration custody or, in the alternative, dismissal of the indictment, as the government's chosen custodial arrangement and the impossibility of proper attorney access impose an insuperable limitation on the defense's trial preparation in a manner consistent with the Constitution.

## II. Legal Standard

The question in this motion is not whether the executive branch may place Mr. Blandon-Saavedra in immigration custody. The issue: What to do *because* it placed him in immigration custody, and harmed his trial rights.

In this proceeding, the Court, starts from premise that it is *Defendant's* constitutional rights that are entitled to maximum protection and less government encroachment than any interest the government may have in a removal or immigration proceeding. Applying a classic scrutiny tiering or balancing scale, the calculus substantially weighs in Mr. Blandon-Saveedra's favor. With that legal framework in mind, the question is what remedy is he now entitled based on the executive branch's placement of him in a remote immigration detention facility that disrupted his multiple and superior constitutional trial rights attending to the criminal process. The standard set forth in this Circuit: "If the government, by *placing* [a criminal defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (emphasis added) (citing *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1170, 1180–81 (D. Or. 2012)). In a case, such as here, pursuant to *Trujillo-Alvarez,*

where a criminal defendant has been ordered released pretrial by the judiciary after a contested detention hearing but is transferred too, or remains in, immigration ICE custody, and that transfer to immigration custody disrupts the criminal proceeding the government has a choice: it can decide to abandon the criminal process or follow the criminal proceeding: "*If*, however, the Defendant is not released pending trial as directed by the Magistrate Judge pursuant to the BRA [(Bail Reform Act)], [such as the case here] the pending criminal prosecution of the Defendant *may not go forward*." 900 F. Supp. at 1170. "To hold otherwise would deprive the Defendant of his statutory right to pretrial release under the [Bail Reform Act] and possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel, respectively." *Id.*

Mr. Blandon-Saveedra has been deprived of his Fifth Amendment and statutory right to be released under the Bail Reform Act. And, he has been deprived of his Fifth and Sixth Amendment trial rights. *See Faretta v. California*, 422 U.S. 806, 819 (1975) (stating that the Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense" and that the defense shall be zealous.).

Dismissal of charges "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to

preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting,* 461 U.S. 499, 505 (1983) (internal citations and quotations omitted).

In addition, the importance of interpreter access in criminal proceedings cannot be overstated. "[A] criminal defendant lacking a basic understanding of the English language has a due process right to an interpreter to enable him to understand what is said at trial *and to communicate with counsel*." *United States v. Johnson*, 248 F.3d 655, 664 (7th Cir. 2001) (emphasis added). "The due process clause also prohibits trying the criminal defendant who lacks capacity to understand the proceedings, to consult with counsel, or to assist in the preparation of his defense." *United States v. Mosquera*, 816 F. Supp. 168, 173 (E.D. N.Y. 1993) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). "This prohibition refers not only to mental incompetents, but also to those who are hampered by their inability to communicate in the English language." *Id.* "Due process demands that criminal defendants be given the means to understand the charges lodged against them . . . . It is fundamental that a defendant must be" informed of the nature of allegations against him "in a language he or she can understand. This is the responsibility of the government, which brought the charges, not of the defendant." *Id.*

"In a judicial proceeding where a defendant lacks the ability to speak or understand English, an interpreter can be essential for ensuring a fair trial." *United States v. Si*, 333 F.3d 1041, 1042 (9th Cir. 2003). "The protection of the Constitution extends to all, to those who speak other languages as well as to those born with English on the tongue." *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923); *see also Farrington v. Tokushige*, 273

U.S. 284, 298 (1927) (holding that the Constitution protects "those who speak another tongue.").

Mr. Blandon-Saveedra's right to counsel depends on interpreter access. As the Ninth Circuit has recognized, "[i]nterpreters play an important role in protecting the rights of non-English speaking persons." *United States v. Murguia-Rodriguez*, 815 F.3d 566, 568 (9th Cir. 2016). In that case, the Court noted that "over 60 million people in the United States speak a language other than English at home," and that among them, "15.4% speak English 'not well' and 7% (over 4 million) speak English 'not at all.'" *Id.* (citing U.S. Census Bureau, Language Use in the United States: 2011, at 3 (Aug. 2013)). The Court emphasized that "[e]ffective language assistance is necessary to ensure that these individuals have meaningful access to government entities and programs," particularly "in the courtroom where individuals must communicate in 'precise language' under stressful conditions and key determinations affecting the individual's personal liberty or financial well-being are often 'made based on credibility.'" *Id.* (internal citation omitted). And those numbers are from over a decade ago. "[A]n interpreter is necessary to protect the accused's constitutional rights to fundamental fairness and due process of law, including the rights to be present at and *participate i*n the proceedings." *United States v. Adams*, --- F. Supp. --- 2025 WL 2713262, at *3 (D.D.C. Sept. 24, 2025).

This case law underscores that interpreter access is not merely a procedural accommodation but a constitutional necessity when a defendant's ability to understand and participate in his defense is at stake. In the context of Mr. Blandon-Saavedra's case, the lack of consistent interpreter availability at the Adelanto ICE Processing Center has rendered communication between attorney and client effectively impossible. Without such access, the defense cannot meaningfully review discovery, prepare testimony, or ensure that the

defendant comprehends the proceedings against him, which are core elements of the Sixth Amendment right to counsel. *See Murguia-Rodriguez*, 815 F.3d at 568; *see also* 28 U.S.C. § 1827(d)(1) (requiring courts to provide certified or otherwise qualified interpreters to ensure comprehension during judicial proceedings); *Mosquera*, 816 F. Supp. at 174 (reasoning that 18 U.S.C. § 3006A outlines the Court's authority to require interpretation of testimony or writings).

The deprivation of interpreter access here has therefore exacerbated the barriers caused by the defendant's immigration detention. As the Supreme Court observed in *Geders v. United States*, 425 U.S. 80, 88–89 (1976), restrictions that "sever[] the defendant from his counsel" during critical stages of the proceedings undermine the "framework within which counsel can render effective assistance." The same principle applies with equal force where, as here, the government's custodial arrangement effectively prevents meaningful communication due to language barriers.

## III. Argument

This is not a good faith analysis. The government's efforts to cure the disruption to the deprivation at hand are not relevant because it has caused the disruption in the proceeding by placing Mr. Blandon-Saavedra into immigration custody in contravention of the release order in this case. The error here is structural effecting basic trial rights and cannot be cured by the government's efforts to improve the disruptions. The government has a choice, proceed here and honor the terms of the proceeding it commenced including Mr. Blandon-Saveedra's release, or proceed in immigration custody. If it chooses the later, dismissal is warranted. It cannot expect the Court and the defense to accommodate its request to have it both ways. Simply, defense is already constitutionally ineffective, the government

/ / /

should not get the benefit of proceeding to trial having engendered the ineffectiveness.

The Laken Riley Act, the government articulate during the October 17, 2025, status conference has no application to this proceeding and to the extent it does, that is because the government has voluntarily placed Mr. Blandon-Saavedra in immigration proceedings. Mr. Blandon-Saveedra has been ordered released in this proceeding, the government could bypass the Laken Riley Act if it opted to end the immigration proceeding and proceed here. It has voluntarily decided against that. Laken Riley's constraints, are of the government's creation, not the Court's or the defense's.

Mr. Blandon-Saavedra's continued detention in an immigration facility has created ongoing and compounding violations of his constitutional and statutory rights. He has been denied meaningful access to counsel, reliable interpreter services, and the basic conditions necessary for effective trial preparation. And he is laboring under a restriction of no access to counsel that the government is not. It is uncontroverted the government has access to its agents. The defense is entitled to no less trial preparation than the government. *See e.g.*, *United States v. Bahamonde*, 445 F.3d 1225, 1228-29 (9th Cir. 2006) (reversing conviction after holding that it was fundamentally unfair and constitutional error to require the defense to follow a Department of Homeland Security regulation requiring it to set forth in writing the nature and relevance of testimony it sought from a DHS employee without requiring the same from the government, and for the district court to exclude testimony from the DHS case agent when the defendant failed to comply); *United States v. Conception*, 651 F. Supp. 3d 1158, 1161 (C.D. Cal. 2023) (district court concluding that the defense should not be subject to greater discovery restrictions than the government, because "[a] rule for thee but not for me, unjustified by a material distinction, smacks of unfairness.").

These circumstances undermine the Sixth Amendment, the Bail Reform Act, and the integrity of the Court's release order. The appropriate remedies are release from immigration custody or dismissal of the indictment.

### A. The Government's Actions Have Resulted in Continuing Violations of the Defendant's Right to Counsel

The record before the Court demonstrates that Mr. Blandon-Saavedra cannot prepare for trial under the conditions imposed by his immigration detention. Defense Investigator Elizabeth Aguilar was denied entry and prohibited from conducting a confidential legal visit with the defendant on October 18, 2025. (Decl. of Elizabeth Aguilar ¶¶ 3–7 (Oct. 20, 2025)). The following day, Deputy Federal Public Defender Ayah A. Sarsour was delayed for nearly an hour and was unable to communicate effectively with her client because there was no available legally certified Spanish-language interpreter. (Decl. of Ayah A. Sarsour ¶¶ 4, 7–9 (Oct. 20, 2025)). Branch Chief Young J. Kim attests that the Federal Public Defender's Office has exhausted interpreter resources and that repeated efforts to secure certified interpreters since October 17, 2025, have been unsuccessful. (Decl. of Young J. Kim ¶¶ 3–5 (Oct. 20, 2025)).

These facts show a continuing pattern of interference with the defense's ability to confer with the client and prepare for trial. The Supreme Court has long held that the right to counsel is not an abstract formality but a practical guarantee of effective representation. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). When government conduct severs a defendant from counsel or makes communication effectively impossible, it violates the Sixth Amendment. *Geders v. United States*, 425 U.S. 80, 88–89 (1976); *Maine v. Moulton*, 474 U.S. 159, 170–71 (1985).

/ / /

Here, the government's custodial decisions have effectively cut the defendant off from his lawyers. Each failed legal visit, each failed attempt to prepare his defense, and each day of obstructed access deepens the constitutional harm. The result is that Mr. Blandon-Saavedra cannot meaningfully review discovery, discuss strategy, help in investigation efforts, or participate in his defense. This is precisely the type of interference the Sixth Amendment forbids. And, it bears repeating, his current deprivation stems entirely from the government's refusal to adhere to the release order issued in this matter. The animating question, why did it bring this case if it had no interest in following a critical detention order?

**B. The Government's Use and Choice of Immigration Custody Has Undermined Judicial Authority and the Defendant's Right to Pretrial Release**

The Ninth Circuit has made clear that when the government's use of immigration custody interferes with a criminal defendant's right to pretrial release and ability to prepare for trial, the district court may fashion an appropriate remedy. Continuing detention in defiance of the release order deprives the defendant of the statutory right to pretrial release and threatens the Fifth and Sixth Amendment guarantees of due process and effective assistance of counsel.

That is exactly what has occurred here. The government's election to house the defendant in an immigration facility, despite the Court's orders and the known barriers to counsel access, has undermined the Court's ability to ensure a fair trial. The executive branch may not rely on its immigration authority to override judicial determinations under the Bail Reform Act or to prosecute a defendant who cannot effectively communicate with counsel. The judiciary's authority to control its own proceedings would mean little if

/ / /

executive custody could nullify its orders. Dismissal is warranted under Rule 48(b).

## IV. Conclusion

The magnitude of the constitutional violations Mr. Blandon-Saavedra is enduring cannot be ignored. Every day that Mr. Blandon-Saavedra remains in immigration custody compounds the constitutional harm. The defense continues to encounter the same barriers that this Court has already sought to address. The pattern of interference has not been corrected; it has become entrenched because Adelanto cannot provide the requisite level of client access as if Mr. Blandon-Saveedra was detained pretrial in United States Marshal custody. The's government's preference for an immigration proceeding is a decision it may make, but it cannot redound to its benefit here in conferring a trial preparation advantage. The Court's inherent supervisory authority allows it to act when government conduct compromises the integrity of the judicial process. *See Hasting*, 461 U.S. at 505. Where violations of this magnitude persist, dismissal is warranted to ensure that the government does not benefit from its disruptions and to preserve the integrity of the judicial system.

In the alternative, the defense proposes that Mr. Blandon-Saavedra be brought to the Riverside federal courthouse daily, specifically to a courtroom, or a jury room to permit confidential attorney-client meetings and discovery review in preparation for trial. This solution would allow for a court-certified interrupter to be present and would ensure meaningful communication between Mr. Blandon-Saavedra and his counsel and allow the defense to comply with the Court's scheduling orders and discovery obligations.

This is an adversarial proceeding. It is not the responsibility of the defense to assist the government in its prosecution of Mr. Blandon-Saavedra, nor should it be the responsibility of defense counsel to continually navigate

bureaucratic obstacles simply to have basic access to their client. The Sixth Amendment guarantees the defendant, not the government, the right to effective representation. The government's ongoing restrictions have made that representation impossible under current conditions.

Accordingly, the Court should exercise its authority to enforce its prior orders and protect the defendant's constitutional rights. *See United States v. Blandon-Saavedra*, No. 5:25-cr-310-KK-1 (C.D. Cal. Oct. 17, 2025) (statement of the Court at 12:03–14:47) (ECF No. 35) (audio recording on file with the Clerk of Court) (noting that continued government-imposed restrictions were likely to result in a Sixth Amendment violation). The Court should order Mr. Blandon-Saavedra's immediate release from immigration custody or dismissal if the immigration officials cannot produce the necessary transport to the courthouse to facilitate late-stage trial preparation. Should the government refuse to comply, the Court should dismiss the indictment to prevent further constitutional violations and to uphold the integrity of these proceedings.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 21, 2025 By /s/ Ayah A. Sarsour

AYAH A. SARSOUR
Deputy Federal Public Defender

By /s/ Chad Pennington

CHAD PENNINGTON
Deputy Federal Public Defender

## CERTIFICATE OF COMPLIANCE AND DECLARATION

I, Ayah Sarsour, counsel of record for the defendant, certify that this filing complies with the requirements of L.R. 11-6.1.

I, Ayah Sarsour, counsel of record, further certified under penalty of perjury that the representations in this filing are true and accurate.

DATED: October 21, 2025 By /s/ Ayah A. Sarsour

AYAH A. SARSOUR
Deputy Federal Public Defender