CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
AYAH A. SARSOUR (Bar No. 340280)
(E-Mail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOSEPH BLANDON-SAAVEDRA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH BLANDON-SAAVEDRA

Defendant.

Case No. 5:25-cr-00310-KK-1

**DECLARATION IN SUPPORT OF DEFENDANT'S**

I am the attorney for Joseph Blandon-Saavedra. Provided below is the declaration of Elizabeth Aguilar, a trial investigator at the Federl Public Defender for the Central District of California. The below declaration is offered under penalty of perjury.

*/s/ Chad Pennington*

Chad Pennington
Deputy Public Defender
Attorney for Defendant
Joseph Blandon-Saavedra

October 20, 2025

DATE

## DECLARATION OF ELIZABETH AGUILAR

I, Elizabeth Aguilar declare:

1. I am an Investigator for the Federal Public Defender's Office with the Central District of California, and our office has been appointed to represent Mr. Blandon-Saavedra on this criminal matter.

2. I have been an investigator with this office for two years. Prior to that, I was an investigator with the L.A. County Public Defender. I have extensive experience investigating federal and state felony matters. I have extensive experience interviewing inmates detained in both pretrial and post-sentencing settings.

3. On Saturday, October 18, 2025, at approximately 9:55 a.m., I arrived at the Adelanto Detention Center at 10400 Rancho Rd., Adelanto, CA 92301, to visit our client, Joseph Blandon-Saavedra. I identified myself as an investigator with the office of the Federal Public Defender and indicated that I needed a legal visit with my client. I presented my FPD credentials, my California driver license (CDL) and the Attorney Letter advising the facility that we were appointed to represent our client in a matter pending before the Unites States District Court, Central District of California. The front desk clerk (I did not get her name) did not take my CDL or my credentials. She asked me again who I was with. I handed her the attorney letter as I identified myself again. She took the letter and said she would have to call the client's immigration agent to let him know I was there.

4. The female clerk seemed overwhelmed as she had a few lists in front of her and people waiting in line to be checked in. She checked the lists and then made a call to someone and told them an investigator wanted

to visit with a detainee. She asked me if I had documents for the client to sign, and I responded, yes, and that I had a case file and a laptop with the cord because I needed to review discovery with the client.

5. The female clerk relayed what said and then hung up. She told me an officer would come up to speak with me and she would get him so I could visit. She said she would keep the attorney letter and told me to wait in the lobby for officer assistance.

6. At approximately 10:45 a.m., a 2nd clerk, Mr. Edwards started working the front desk with the female clerk. He called me up to the front desk. Mr. Edwards read the attorney letter and said he could not treat this visit like an attorney visit because I did not have a bar card. I asked what that meant because I was there to review case material, review discovery on my laptop, discuss the case, and have him sign documents.

7. Mr. Edwards explained that only attorneys are allowed to take documents into a client meeting. Mr. Edwards advised that if I was allowed in the facility at all, admission would only be as a “no- contact” visit with the client, the same type of visit as a member of the general public, and not a legal attorney visit where we would be given a private room to speak.

8. I advised Mr. Edwards that I needed to speak with our client in preparation for our case with at least my case file and in a private setting. Again Mr. Edwards said I would not be able to take in <u>anything</u> with me for the client visit, including no legal documents, no case file, no laptop, no discovery, nothing.

9. Mr. Edwards said he would call his supervisors and determine whether my visit could processed and he asked that I wait in the lobby for a response. He kept the attorney letter.

9. At approximately 11:35 a.m., after Mr. Edwards and the female clerk cleared the 11:00 a.m., visitors, Mr. Edwards called me to the front desk.

Mr. Edwards stated he was still waiting to hear if I could have a "no-contact" visit and reminded me that I would not be allowed to take anything in, and the visit would be in a room with the other visitors. He wanted to let me know because he knew I wanted to discuss legal matters and a "no-contact" visit does not allow for a private detainee meeting.

10. I told Mr. Edwards that a "no-contact" visit would be fruitless and that I needed to have access and permission to visit with the client just as an attorney does. I explained that it was crazy how I can have legal visits at MDC, West Valley Detention Center, CDC, for clients in pretrial federal custody, and even federal prisons with inmates serving a sentence without a bar card, but cannot get a legal visit at an Immigration Processing Center.

11. Mr. Edwards advised that Immigration facilities are not similar to federal prisons and that the protocol he must follow is set by the Geo Group and Immigration guidelines. Mr. Edwards said I needed approval from the ICE officer to get legal visit privileges.

12. I confirmed with Mr. Edwards that as of this moment, I could not have a contact legal visit and if I was allowed a visit, it would be as a no-contact visit only, meaning I could not take anything in with me. Mr. Edwards confirmed.

13. I thanked Mr. Edwards and decided to leave after 2 hours of waiting for a visit. I left the facility at approximately 11:45 a.m. without having secured a client visit

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

//

//

Executed on October 20, 2025, in Riverside, California.

By ______________________________
ELIZABETH AGUILAR, Investigator