CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
AYAH A. SARSOUR (Bar No. 340280)
(EMail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOSEPH BLANDON-SAAVEDRA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 5:25-cr-00310-KK-1 |
|---|---|
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS OR FOR ALTERNATIVE REMEDIES DUE TO SPOLIATION OF THE EVIDENCE AND VIOLATION OF FED. R. CRIM. P. 16; DECLARATION OF COUNSEL; EXHIBITS** |
| JOSEPH BLANDON-SAAVEDRA | |
| Defendant. | |

**Trial: November 17, 2025**

**Pretrial Conference: November 6, 2025.**

Defendant Joseph Blandon-Saavedra, by and through counsel of record, Deputy Federal Public Defenders, Ayah A. Sarsour and Chad Pennington hereby moves for dismissal of the indictment on the grounds that the: 1) government destroyed or failed to preserve material, exculpatory evidence, or, alternatively, 2) that the government destroyed or failed to preserve potentially useful evidence and did so in the absence of good-faith.

This motion is made pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, as well as *Brady v. Maryland*,

373 U.S. 83 (1963); *California v. Trombetta*, 467 U.S. 479 (1984); *Arizona v. Youngblood*, 488 U.S. 51 (1988), and their progeny.

This motion is supported by the accompanying Memorandum of Points and Authorities and the offered exhibits, files, and records in this case, the possible testimony of witnesses called at any hearing, and any additional arguments and evidence that may be presented to the Court during any scheduled hearing on this motion. The defense has provided notice of the motion, and the parties have conferred. *See* Ex. C. As a result, the dispute is ripe for the Court's resolution.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

By  s/ Ayah A. Sarsour
Ayah Sarsour
Deputy Federal Public Defender

DATED: October 29, 2025    By  s/ Chad Pennington
Chad Pennington
Deputy Federal Public Defender

# TABLE OF CONTENTS

Page

I. PROCEDURAL HISTORY AND BACKGROUND INFORMATION ......... 1

II. LEGAL STANDARD ................................................................................ 6

    A.    Material exculpatory evidence ................................................. 8

    B.    Potentially useful evidence .................................................... 8

    C.    The Ninth Circuit is instructive here .................................... 9

    D.    Rule 16(a)(1)(e) ..................................................................... 10

    E.    Remedies ................................................................................ 11

III. ARGUMENT ........................................................................................ 12

    A.    The repaired vehicle was material ....................................... 12

    B.    The repaired vehicle was potentially useful ............................. 14

    C.    The government did not act in good faith. .................................. 15

    D.    Rule 16 separately requires dismissal ..................................... 19

IV. CONCLUSION ....................................................................................... 20

i

TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arizona v. Youngblood,*
    488 U.S. 51 (1988) .................................................................... *passim*

*Brady v. Maryland,*
    373 U.S. 83 (1963) .................................................................... *passim*

*California v. Trombetta,*
    467 U.S. 479 (1984) .................................................................. *passim*

*Giglio v. United States,*
    405 U.S. 150 (1972) ................................................................. 1, 3, 7

*Illinois v. Fisher,*
    540 U.S. 544 (2004) ......................................................................... 8

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ......................................................................... 7

*United States v. Cooper,*
    983 F.2d 928 (9th Cir. 1993) ................................................... *passim*

*United States v. Del Toro-Barboza,*
    673 F.3d 1136 (9th Cir. 2012) ........................................................ 8

*United States v. Flyer,*
    633 F.3d 911 (9th Cir. 2011) .................................................. 11, 16

*United States v. Hernandez-Meza,*
    720 F.3d 760 (9th Cir. 2013) ....................................................... 11

*United States v. Lloyd,*
    992 F.2d 348 (D.C. Cir. 1993) .................................................... 11

*United States v. Muniz-Jaquez,*
    718 F.3d 1180 (9th Cir. 2013) ..................................................... 11

*United States v. Sivilla,*
    714 F.3d 1168 (9th Cir. 2013) ................................................ 12, 16

*United States v. Zaragoza-Moreira,*

    780 F.3d 971 (9th Cir. 2015) ............................................................ *passim*

**Federal Statutes**

18 U.S.C. § 111(a)(1), (b)............................................................ *passim*

Jencks Act (18 U.S.C. § 3500)............................................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES
## I. PROCEDURAL HISTORY AND BACKGROUND INFORMATION

Imagine this: the government charges a man with criminally assaulting federal officers with a dangerous weapon, for example with a firearm or a knife. Now imagine those same officers are in-turn accused by the defense of using deadly weapons against the defendant – of also using firearms or knives. Now imagine in that same case, some of the weapons used by the conflicting parties have either been altered, became unavailable for inspection, or disappeared. As unbelievable as that sounds, that is exactly what happened in this case.

This is a case about a car collision between Mr. Blandon-Saavedra and immigration officials that the government claims resulted in an assault on federal employees. The damage to the vehicles involved in the collision – their psychical condition and their inspectable damage is of obvious importance to the defense. Indeed, the government seeks enhanced statutory punishment, use of a dangerous weapon, stemming from Mr. Blandon-Saavedra's use of his car and the contact it had with the government car(s). The evidentiary value of the cars/autos involved in the collision has been known by the government since the beginning of its case. A review of the Complaint illustrates the salience of the collision to the government's case. *See* ECF No. 1, p. 5. Unfortunately, and to Mr. Blandon-Saavedra's detriment, a government auto involved in the collision (an unmarked Homeland Security vehicle), *see id.*, is no longer available for defense inspection. The vehicle has been repaired. And, the repair occurred before the defense could physically inspect the vehicles. The government's spoliation of material and useful

evidence warrants dismissal under the Fifth Amendment, Federal Rule of Criminal Procedure 16, and the Court's standing criminal order, Section II.

***

On September 5, 2025, the government filed a complaint charging Mr. Blandon with two counts of assaulting a federal officer with a deadly and dangerous weapon, in violation of 18 U.S.C. § 111(a)(1), (b). *See* Compl., *United States v. Blandon-Saavedra*, No. 5:25-mj-00561-DUTY (C.D. Cal. Sept. 5, 2025), ECF No. 1. The essence of the government's prosecutorial theory is that Mr. Blandon-Saavedra used his vehicle to strike government vehicles during the immigration officials' arrest of Mr. Blandon-Saavedra. Mr. Blandon-Saavedra contests the government's narrative of which vehicle hit which vehicles first, but he now lacks the ability to inspect all of the vehicles involved or present at the scene. Examination of the vehicles involved in the alleged collision is core to the defense's theory to establish reasonable doubt and possibly for use in its case-in-chief. A defense collision expert now cannot review all vehicles in-person, conduct measurements, and conduct a complete analysis of the damage to determine who likely hit who first and under what conditions. Moreover, Mr. Blandon-Saavedra is now at a comparative disadvantage, his car has not been restored, but the government's vehicle has been. In effect, the government can inspect Mr. Blandon-Saavedra's car and invite the jury to make inferences from the damage, Mr. Blandon-Saavedra cannot do the same with the government cars. Unfortunately, the government's repair of its own vehicle before inspection has materially altered the vehicle's state from the time of the alleged collision, and the repaired vehicle will have no use to the defense.

***

2

On September 8, 2025, the defense sent the government a formal discovery demand "pursuant to all court rules, codes, statutes, and case law, including Federal Rules of Criminal Procedure 12, 16, and 26, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act (18 U.S.C. § 3500)." Exhibit A – Letter from Ayah A. Sarsour, Deputy Federal Public Defender, to Courtney N. Williams, Assistant United States Attorney, *Re: United States v. Joseph Blandon-Saavedra*. Pursuant to Federal Rule of Criminal Procedure 16(1)(1)(E), the defense specifically requested: "C. All physical evidence pertaining to this case. [The defense] also request[s] an opportunity to inspect, copy, and/or test all tangible objects and buildings or places which the government intends to use in its case-in-chief at trial and/or which *are material to preparation of Mr. Blandon-Saavedra's defense." Id.* at p. 3 (emphasis added).

On September 24, 2025, the grand jury returned a true bill against Mr. Blandon-Saavedra; the government charged him with two counts of assaulting, resisting, or impeding a federal officer using a deadly or dangerous weapon, specifically a car, in violation of 18 U.S.C. § 111(a)(1), (b). ECF No. 14.

On September 30, 2025, Mr. Blandon-Saavedra appeared for his Post Indictment Arraignment before the Honorable Magistrate Judge David T. Bristow. *See* ECF No. 33. At the hearing, the government was orally advised of the following:

> Before we proceed, I will advise the Government of their obligations under federal law, including Rule 5(f) of the Federal Rules of Criminal Procedure, as well as pursuant to the case of *Brady v. Maryland*, which is found at 373 United States Reports, Page 83, from the year 1963, along with all of the subsequent case

3

law interpreting the *Brady* decision. Pursuant to these authorities, the Government has a continuing obligation to produce all information or evidence known to the Government that is relevant to the guilt or punishment of a defendant, including but not limited to exculpatory evidence. Accordingly, the Court orders the Government to produce to the Defendant in a timely manner all information or evidence known to the Government that is either, one, relevant to the Defendant's guilt or punishment or, two, favorable to the Defendant on the issue of guilt or punishment. This order is entered pursuant to Rule 5(f) and does not relieve any party in this action of any other discovery obligation. The consequences for violating either this order or the Government's obligation under *Brady* include but are not limited to the following: Contempt, sanction, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and/or the dismissal of charges.

ECF No. 18, Transcript of Post-Indictment Arraignment Before the Honorable David T. Bristow, *United States v. Blandon-Saavedra*, No. ED CR 25-310-KK (C.D. Cal. Sept. 30, 2025), filed Oct. 7, 2025. The Court's standing criminal order, Section II, contains similar language regarding defense access to material, exculpatory evidence.

On October 1, 2025, twenty-three days after requested, the government produced its first, and only, production of discovery. Exhibit B – Letter from Courtney N. Williams, Assistant United States Attorney, to Ayah Sarsour, Federal Public Defender's Office, Re: *United States v. Joseph Blandon-Saavedra*, No. ED CR 25-310-KK (C.D. Cal. Oct. 1, 2025). The government provided a letter that corresponded with the production. The letter stated:

4

Dear Ms. Sarsour:

Pursuant to your request for discovery please find the following:

- Reports (USAO_001-USAO_0037);
- Instagram Video (USAO_0038);
- Defendant Statement (USAO_0039);

*The government will make available for your inspection any item of evidence referred to above*, as well as any other evidence seized from your client and/or which the government intends to offer in its case-in-chief. Please contact me to arrange a mutually convenient time for your inspection of such items.

*Id.* (emphasis added). The damaged vehicles were referred to in the discovery production.

On the morning of October 27, 2025, at 10:21 a.m., defense counsel Ayah A. Sarsour, after having the <u>first</u> opportunity to meet with Mr. Blandon-Saavedra with investigator Elizabeth Aguilar of the Office of the Federal Public Defender for the Central District of California, emailed the government to request the dates and times during that week when the defense could conduct an inspection of all vehicles present at the scene, accompanied by the defense investigator. *See* Exhibit C, Email Chain Between Defense Counsel and the Government Regarding Inspection of Vehicles. At 10:27 am, the government responded, informing the defense it would contact its agent, "and [the agent] said he needs to first find out where the vehicles are located. He is making some calls about it. I should have an answer to you no later than tomorrow morning." *Id*. No mention of a vehicle repair was included.

On October 28, 2025, at 12:29 p.m., defense counsel Chad Pennington emailed the government for a status update. *Id*. At 12:34 p.m., the government responded and advised the defense of the following: "My agent said that the vehicles are located in San Bernardino. He said that

5

you can visit them at 10:30 a.m. on Thursday at the earliest. I am waiting for the address of the location. The location does require that you send a copy of your driver's license before visiting. *Lastly, the agent said that one of the vehicles has been repaired. But you can look at both cars if you'd like.* *Id.* (emphasis added).

Defense counsel Pennington responded that the defense's understanding is there were four vehicles involved in this incident, the defense needed to inspect all vehicles, and inquired when were the repairs on the repaired vehicle completed. *Id.* The government responded the following:

> There was one HSI vehicle hit and one ERO vehicle that was hit. Then the defendant's vehicle was part of the crash. That's it. The HSI vehicle and the ERO vehicle are located at 655 West Rialto Avenue, San Bernardino, 92410. The ERO building. *The HSI vehicle was repaired. They wrapped up the repairs on the vehicle yesterday.*

*Id.* (emphasis added).

Because the vehicle at issue is both material, exculpatory evidence and, at minimum, potentially useful evidence destroyed in the absence of good-faith, the defense respectfully request this Court to dismiss the indictment with prejudice pursuant to controlling constitutional principles, governing precedent, and applicable rules of criminal procedure.

## II. LEGAL STANDARD

"[C]riminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). In addition to the government's obligations to disclose favorable or

6

impeachment evidence under *Brady* and *Giglio*, the Supreme Court in *Trombetta* held that to protect a defendant's right to present a complete defense, due process is violated, and a defendant is entitled to a remedy, when the government destroys or fails to preserve evidence. 467 U.S. at 489. Evidence that the government fails to preserve falls into two remedial categories: (1) material exculpatory evidence and (2) potentially useful evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). Under the *Trombetta* standard, material exculpatory evidence is such destroyed "evidence that possess[es] an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489; *see also United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (quoting *Trombetta*, 467 U.S. at 489) (cleaned up). "Potentially useful evidence," on the other hand, is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."[1] *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015).

---

[1] Because they are Constitutional obligations, *Brady* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).  Indeed, it is true, and has always been true that Mr. Blandon-Saavedra is:

> [E]ntitled to a speedy and public trial by jury. The right to a jury trial can be waived. [He is] entitled to see and hear the evidence and cross-examine the witnesses against [him]. [He is] entitled to the

7

## A.    Material exculpatory evidence

Critically, the Supreme Court has said that "when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012). The harm is loss of evidence, not the government's intent in the loss. The standard for whether evidence is "material exculpatory" under derives from *Brady*. *See Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (explaining in the context of a *Youngblood* motion that a due process violation occurs whenever "the State suppresses or fails to disclose material exculpatory evidence" under *Brady*, regardless of good or bad faith).  As noted above: "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.

## B.    Potentially useful evidence

Even if the Court determines that the *Trombetta* material, exculpatory standard was not met, the circumstances of this case satisfy the due process

---

> processes of the Court to subpoena witnesses on [his] behalf without cost to [him] if [he is] indigent. [He] do[es] not have to prove [his] innocence. The prosecution has the burden to prove [his] guilt beyond a reasonable doubt.

ECF No. 7, *Advisement of Defendant's Statutory and Constitutional Rights*, Form CR-10, (C.D. Cal.) (emphasis added).

violation standard set forth in *Youngblood*, 488 U.S. at 58. "Potentially useful evidence," on the other hand, is "evidentiary material of which no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant." *Zaragoza-Moreira*, 780 F.3d at 978. Useful evidence, unlike material evidence, is subject to good-faith balancing. *See Cooper*, 983 F.2d at 931; *see also Youngblood,* 488 U.S. at 58.

In this context, "bad faith" means that "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id*. at 58. Bad faith exists when a member of the prosecution team fails to preserve evidence while subjectively aware that the evidence was "potentially useful" to the defense. *Id*.

## C.    The Ninth Circuit is instructive here

In *Zaragoza-Moreira*, the defendant was detained by law enforcement as she crossed the Mexico–United States border. 780 F.3d at 978. She was charged by complaint on December 23, 2011, with importing heroin and methamphetamine into the United States. *Id*. Five days later, on December 28, 2011, defense counsel submitted a discovery and preservation of evidence request to the prosecution, expressly stating that "defendant specifically requests that any and all videotapes … that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leadings to the arrest [of Zaragoza-Moreira] in this case be preserved." *Id*.

Approximately two months later, on February 23, 2012, defense counsel filed a motion to compel discovery and preserve evidence, which the district court granted on February 27, 2012. *Id*. at 976–77. The following day, defense counsel specifically requested the Port of Entry surveillance footage from the date of Zaragoza-Moreira's arrest, December 22, 2011. *Id*. at 977. U.S.

Customs and Border Protection subsequently informed the prosecution that the video footage had been destroyed around January 21, 2012, after being automatically recorded over within thirty to forty-five days of Zaragoza-Moreira's arrest. *Id.*

The district court denied the defense's motion to dismiss the indictment for destruction of evidence under *Trombetta* and *Youngblood*. On appeal, the Ninth Circuit reversed, holding that the lower court erred in finding no due process violation. The district court had determined that the destroyed footage was not exculpatory but merely potentially useful and therefore analyzed the issue under *Youngblood's* bad faith standard, concluding that the exculpatory value of the footage "was not readily apparent" to law enforcement. 780 F.3d at 977. The Ninth Circuit disagreed, emphasizing that the district court failed to consider "the [prosecution]'s actions, or lack thereof, in light of the December 28, 2011, letter from defense counsel requesting the preservation of video evidence." *Id.* at 978. The appellate court held that "[t]he district court … clearly erred in finding that the exculpatory value of the video footage … was not readily apparent" to law enforcement. *Id.*

## D.    Rule 16(a)(1)(e)

(E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

10

(ii) the government intends to use the item in its case-in-chief at trial.

"Materiality" in the Rule 16 pretrial context is broader than the *Brady* "materiality" standard at trial because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). Indeed, the Ninth Circuit has held that Rule 16 "materiality" is a "low threshold; it is satisfied so long as the information . . . would have helped" to prepare a defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citation and internal quotation marks omitted); s*ee also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) ("This materiality standard normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.").

## E.    Remedies

A wide array of remedies and sanctions are available when the government fails to preserve either material exculpatory evidence or potentially useful evidence, up to and including dismissal of the indictment. *See Zaragoza-Moreira*, 780 F.3d at 982 (reversing and instructing the district court to dismiss the indictment for the government's failure to preserve potentially useful surveillance footage); *Cooper*, 983 F.2d at 933 (affirming district court's dismissal of an indictment for failure to preserve potentially useful evidence). Even if a court determines that the evidence was destroyed "under circumstances that do not violate a defendant's constitutional rights," sanctions may still be imposed, "including suppression of secondary evidence." *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011). In

deciding what sanctions are appropriate, a court "must balance the quality of the Government's conduct and the degree of prejudice to the accused." *Id.* This balancing test requires consideration of several factors, including "whether the evidence was lost or destroyed while in [the government's] custody, whether the Government acted in disregard for the interests of the accused, [and] whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions." *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (cleaned up). Where the acts were deliberate, courts also consider "whether they were taken in good faith or with reasonable justification." *Id.*

In evaluating prejudice to the accused, courts consider "the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; [and] the probable effect on the jury from the absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence." *Id.* at 1173–74.

## III.ARGUMENT

### A.   The repaired vehicle was material

The repaired vehicle is an immigration vehicle. It was involved in the alleged assault, the auto collision at issue. The government will no doubt attempt to present evidence at trial that Mr. Blandon-Saavedra struck the now repaired vehicle with his vehicle willfully with an intent to assault. Suffice to say, Mr. Blandon-Saavedra disputes the government's narrative regarding who struck whose vehicle. The repaired government vehicle's

materiality is obvious and plain. The state of the vehicles at issue – the damage – offers evidence into whether it was Mr. Blandon-Saavedra that initiated contact, or whether he was struck first. The state of the damage provides evidence at the likely rate of speed Mr. Blandon-Saavedra was driving, and conversely, the repaired vehicle as well.

For example, because the repaired government vehicle is no longer in the state it was from the time of the accident, it cannot now be inspected or reviewed by the defense or by a defense collision expert. The defense can no longer obtain an independent assessment of the vehicle's damage or whether the damage suggests it was the government vehicle that struck Mr. Blandon-Saavedra first. The government's claim is that Mr. Blandon-Saavedra initiated contact, but because of a careless repair, the defense now cannot have an expert review all the cars in the accident to determine whether the unaltered damage supports the differing defense view regarding the collision's causation. If the government vehicle had struck Mr. Blandon-Saavedra's vehicle first, that would potentially defeat an essential element on the assault charge – whether he acted willfully. If the government vehicle had struck Mr. Blandon-Saavedra's first or initiated the contact, the government's narrative is less credible and subject to critical reasonable doubt. And, if it was the government vehicle that initiated the contact, then the government's claim that Mr. Blandon-Saavedra acted with a dangerous weapon is cast into doubt. Indeed, physical inspection of the very vehicles involved in the assault could have been used to establish that Mr. Blandon-Saavedra was the victim of a dangerous weapon and his responding actions proportional to the government inducted threat, attack rather than committing an assault. That opportunity is lost. The unrepaired government

vehicle contained material, probative evidentiary value and, at a minimum, potentially exculpatory.

The vehicle at issue is not merely incidental to the government's case; it is the core, the alleged "deadly or dangerous weapons" used by Mr. Blandon-Saavedra forming the foundation of the indictment. The same government vehicles that prosecutors claim were struck by Mr. Blandon-Saavedra were, in fact, the vehicles used by law enforcement agents to box him in, surround him, and force contact and a reckless auto collision. The damage patterns, impact points, and physical condition of all of those vehicles was, therefore, critical to determining whether Mr. Blandon-Saavedra intentionally struck law enforcement officers, as alleged, or whether the contact resulted from the government's own use of force. The value of the repaired vehicle was plain.

Last, the exculpatory value of the government vehicles was readily apparent: the physical damage, or lack thereof, could demonstrate whether the vehicles made contact with Mr. Blandon-Saavedra's car, the direction and degree of impact, and whether the collisions were caused by government agents rather than the defendant. Once the vehicle was repaired, that critical physical evidence was permanently destroyed, leaving the defense unable to conduct independent inspection, documentation, or alternative testing. Because the vehicle's original condition could have directly corroborated Mr. Blandon-Saavedra's version of events, they constitute *material exculpatory evidence* under *Trombetta*. The Court can and should stop here without conducting a good-faith analysis and dismiss the indictment.

## B.    The repaired vehicle was potentially useful

Even if the Court finds that the cars were not materially exculpatory evidence, they are, at the very minimum, *potentially useful* evidence that

14

cannot be replicated nor cured because of the government's spoilation. Here, the destroyed or altered government vehicles could have been subjected to physical and forensic inspection to determine causation, velocity, and collision dynamics are all factors directly bearing on intent, a central element of the charged offense. The probative value of the vehicles and their role in the disputed collision, as noted above, is clear even from the government's narrative of the events in the Complaint.

## C.    The government did not act in good faith

On September 8, 2025, the defense specifically requested that a*ll physical evidence pertaining to this case* be preserved, produced, and available to the defense for inspection. *See* Ex. A. On October 1, 2025, the government produced discovery and indicated that it would make any such evidence available for inspection. The defense never indicated it would not continue to seek inspection of the evidence, the government never (nor could it) stated it would prevent inspection of the physical evidence by a particular date. By repairing the vehicle after offering to make the vehicle available for inspection, the government breached its own production letter terms.

The day Mr. Blandon-Saavedra requested inspection of the vehicles (which, was the very first day defense counsel was permitted to meet with him because of the government's placement of him in Adelanto) the government completed repairs of its own vehicle involved in the alleged assault. The repair was negligent if not reckless in relation and proportionate to the needs and issues of this case. If the agents orchestrated the repair on their own, it demonstrates further lack of government care and control in this matter, *e.g.*, a pattern of late filings, late arrivals, and now destruction of evidence.

By not following its own agreement to make such evidence available for inspection, the repair demonstrated a lack of proper care and regard for the perseveration of criminal evidence. The government repaired the vehicle nearly two months after the vehicles were in the possession of the government. And nearly two months after the defense had sent out a discovery request. The repair came just two and a half weeks before Mr. Blandon-Saavedra is expected to be tried in federal court where his life, liberty, and even possibly his very status in this country could be impacted. And the repair was completed on the very day inspection was requested, the very first day inspection could be requested given the client availability issues well documented in this case.

Here, the government's destruction and alteration of the vehicles that are the central physical evidence in a prosecution alleging use of a "deadly weapon", caused irreparable prejudice to Mr. Blandon-Saavedra. The evidence was destroyed while in government custody, despite the defense's timely discovery request and explicit request for inspection. The loss prevents the defense from conducting independent testing or presenting physical proof to counter the government's narrative. Under the *Flyer* and *Sivilla* framework, these circumstances warrant the most severe sanction available: dismissal of the indictment with prejudice.

To that end, no alternative sanction can restore the lost evidence or cure the resulting prejudice. The altered condition of the vehicle eliminates the possibility of independent examination to determine how the collisions occurred and whether law enforcement officers, rather than Mr. Blandon-Saavedra, caused the impact.

Without that opportunity, the defense cannot meaningfully contest the government's central theory of intent. This is precisely the type of irreparable

prejudice that warrants dismissal under *Zaragoza-Moreira*, 780 F.3d at 982, and *Cooper*, 983 F.2d at 933, both of which recognize dismissal as the proper remedy where the government's failure to preserve critical physical evidence undermines the defendant's right to a fair trial. Because no curative instruction, evidentiary sanction, or substitute evidence can restore what has been lost, dismissal with prejudice is the only means of safeguarding due process and preserving the integrity of the judicial process.

A dismissal without prejudice would not remedy the harm caused by the government's destruction of the vehicles because the prejudice to Mr. Blandon-Saavedra is permanent and irremediable. The condition of the vehicles, again it bears repeating that this is the very evidence at the center of the government's allegations, can never be restored to its original state. The defense will never be able to examine the vehicles to determine how the collisions occurred, to assess the nature of the damage, or to develop expert testimony rebutting the government's "deadly weapon" theory. Permitting the government to refile the same charges after the physical evidence has been altered would compound, rather than cure, the constitutional violation. The spoilation of this evidence has forever deprived Mr. Blandon-Saavedra of the opportunity to present a complete and fair defense, rendering any future prosecution fundamentally unfair. *See Trombetta*, 467 at 485 (holding that due process requires a meaningful opportunity to present a complete defense). Because the loss of this evidence is irreversible, only dismissal with prejudice can protect Mr. Blandon-Saavedra's due process rights and preserve the integrity of the judicial process.

Moreover, the facts and reasoning in *Zaragoza-Moreira* further compels the same result here. As in that case, the defense in this matter made a timely and explicit written request that the government preserve and permit

inspection of physical evidence central to the prosecution's theory; namely, the vehicles alleged to be "deadly weapons." *See* Ex. A. Despite that request, the government allowed the destruction and alteration of the very evidence whose condition would have determined whether Mr. Blandon-Saavedra intentionally assaulted federal officers or whether, instead, agents themselves caused the collision by boxing him in. The government's confirmation that "they wrapped up the repairs on the vehicle yesterday," *see* Ex. C, mirrors the conduct condemned in *Zaragoza-Moreira*, where law enforcement destroyed video evidence despite a preservation demand.

In fact, the government's conduct here is even more egregious than that condemned in *Zaragoza-Moreira*. In that case, the destruction of evidence resulted from an automatic recording system that overwrote surveillance footage within thirty to forty-five days of the defendant's arrest. *Zaragoza-Moreira*, 780 F.3d at 971, 977. Here, by contrast, the government had full knowledge of the defense's preservation request, complete control over the evidence, and ample opportunity to safeguard it. Yet, weeks before trial and nearly two months after the incident, during a federal government shutdown, the government affirmatively chose to repair and alter the very vehicle it alleges were involved in the crash where another car involved in some form of collision was used as a "deadly weapon." Unlike in *Zaragoza-Moreira*, this was not passive or inadvertent loss; it was a volitional act that destroyed uniquely exculpatory physical evidence after formal notice of its significance. Such conduct demonstrates not mere negligence but deliberate indifference, satisfying the bad faith standard articulated in *Youngblood* and compelling dismissal with prejudice.

The Ninth Circuit made clear that once the government is placed on notice of a defense request to preserve specific evidence, its subsequent

failure to protect that evidence demonstrates bad faith when the exculpatory value is "readily apparent." *Zaragoza-Moreira*, 780 F.3d at 978. Here, the exculpatory value of the vehicles was not only readily apparent, it was the central issue in the case as stated in the Complaint. Accordingly, the government's decision to permit the repair and alteration of those vehicles after receiving a preservation request constitutes bad faith under *Zaragoza-Moreira* and requires dismissal of the indictment with prejudice.

**D.    Rule 16 separately requires dismissal**

The government's conduct also violates its disclosure and preservation obligations under Rule 16 of the Federal Rules of Criminal Procedure. Rule 16(a)(1)(E) requires the government, upon a defendant's request, to permit inspection of any tangible object "within the government's possession, custody, or control" that is either (1) material to preparing the defense, (2) intended for use by the government in its case-in-chief, or (3) obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

The vehicle at issue falls squarely within each of these categories. It was within the government's control, formed the central basis of the prosecution's theory, and was among the very objects the defense sought to inspect to prepare its case. The vehicle's materiality to the preparation of the defense trial strategy cannot be disputed. Despite the defense's formal written request for inspection under Rule 16, *see* Ex. A, and the government's acknowledgment that it would "make available for [defense] inspection any item of evidence referred to above," *see* Ex. B, the government knowingly permitted the vehicle to be repaired and materially altered before inspection could occur. This conduct deprived the defense of its Rule 16 right to meaningfully inspect and test the evidence and constitutes a direct violation of the rule's purpose of ensuring fairness, preventing surprise, and allowing

adequate trial preparation. By failing to preserve and produce the vehicles in their original condition after formal notice, the government disregarded its continuing duty to comply with discovery obligations, thereby undermining both the letter and spirit of Rule 16.

## IV. CONCLUSION

Mr. Blandon-Saavedra has endured significant and continued deprivations of his constitutional right to a fair trial in this proceeding. The most recent deprivation, the irreparable harm he has suffered attending the spoilation of evidence, warrants dismissal.

For these reasons, Mr. Blandon-Saavedra respectfully requests that this Court dismiss the indictment with prejudice.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  October 29, 2025        By  s/ Ayah A. Sarsour
AYAH A. SARSOUR
Deputy Federal Public Defender

By  s/ Chad Pennington
Chad Pennington
Deputy Federal Public Defender

## CERTIFICATE OF COMPLIANCE AND DECLARATION

I, Chad Pennington, counsel of record for the defendant, certify that this filing complies with the requirements of L.R. 11-6.1 with 5,882 words.

I, Chad Pennington, counsel of record, further certified under penalty of perjury that the representations in this filing are true and accurate.

DATED:  October 29i just , 2025   By s/ Chad Pennington
                                    Chad Pennington
                                    Deputy Federal Public Defender

21